UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
UNITED STATES OF AMERICA :
: S1 16 Cr. 212 (LAK)
- v. - :
:
DEVIN WALKER, :
:
Defendant. :
:
------------------------------------------------------------------------X

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

                PREET BHARARA
                United States Attorney
                Southern District of New York
                One St. Andrew's Plaza
                New York, New York 10007

RACHEL MAIMIN
MICAH W.J. SMITH
HAGAN SCOTTEN
JESSICA FEINSTEIN
DREW JOHNSON-SKINNER
Assistant United States Attorneys
    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA                                                :
                                                                        :    16 Cr. 212 (LAK)
                         - v. -                                         :
                                                                        :
DEVIN WALKER,                                                           :
                                                                        :
                         Defendant.                                     :
                                                                        :
------------------------------------------------------------------------X
```

## PRELIMINARY STATEMENT

The defendant in this case, Devin Walker, is scheduled to be sentenced on November 15, 2016.  The Government respectfully submits this memorandum in advance of that sentencing and in response to Walker's sentencing memorandum, dated October 14, 2016, which requests a sentence of probation—a significant downward variance from the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 21 to 27 months' imprisonment.  For the reasons that follow, the Government disagrees and respectfully requests that the Court impose a sentence within the Guidelines range.  Walker was a member of a violent street gang—the 2Fly YGz ("2Fly" or the "Gang")—who committed at least one act of violence with the Gang.  While there is no dispute that Walker was a low-level member of 2Fly, Walker is essentially asking this Court to impose a sentence of less than 6 months' imprisonment.  That would not come close to meeting the statutory sentencing factors, especially the need for just punishment and to afford adequate deterrence to criminal conduct.  A sentence within the Guidelines range is necessary to send the message that joining a violent street gang will be met severely by the Courts.

I.      **Procedural History**

On April 27, 2016, the S1 Indictment in this case was unsealed, charging 57 members and associates of 2Fly with: (1) racketeering conspiracy, in violation of Title 18, United States Code Section 1962; (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution, in violation of Title 21, United States Code, Section 860; and (4) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

On July 28, 2016, Walker pled guilty to Count One of the S1 Indictment in this case, which charged him with racketeering conspiracy, in violation of Title 18, United States Code, Section 1962. (PSR ¶ 8.)

II.     **Offense Conduct**

   A.  **Background**

Beginning in December 2014, the New York City Police Department, the Drug Enforcement Administration, Homeland Security Investigations, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation into two rival street gangs—2Fly and the Big Money Bosses ("BMB")—that were operating in the Bronx, New York. The investigation revealed that since at least in or about 2007, up until in or about 2016, members of BMB and 2Fly were involved in a variety of racketeering acts, including murders, attempted murders, robberies, narcotics trafficking, bank fraud, and counterfeit currency offenses.

   B.  **2Fly**

The structure of 2Fly is described accurately in the PSR at paragraphs 12-22.

2Fly was a subset of the "Young Gunnaz," or "YG" street Gang, which operates nationwide. 2Fly was based in the Bronx, within and around the Eastchester Gardens housing

development ("ECG"), and developed out of a smaller, precursor crew called the "Fresh Kids." ECG is a rectangular complex of residential buildings in the Northern Bronx bordered by Burke, Adee, Yates, and Bouck Avenues, in the middle of which is a playground.

Members of 2Fly controlled the narcotics trade at ECG, which took place in the open air at the playground and in apartments at ECG. Members primarily sold marijuana and crack cocaine, but also sold powder cocaine and prescription pills, such as oxycodone. 2Fly coexisted at ECG with a faction of the Bloods Gang called "Sex Money Murder" ("SMM"), which controlled ECG before 2Fly and allied with 2Fly to prevent others from selling drugs at ECG. Members of the Gang kept guns nearby in garbage cans—feet away from the playground—or in cars in case such violence becomes necessary. These guns were accessible to all 2Fly members and associates. On February 22, 2014, for instance, 2Fly member Elijah Brown, a/k/a "Lil Eli," was arrested after he was seen by police officers retrieving a defaced and loaded gun from behind a garbage can at ECG. Similarly, 2Fly member Dante Gregory, a/k/a "Smiley," was arrested at the ECG playground on April 8, 2014 with a loaded .25 caliber handgun.

2Fly members used relatively elaborate language to communicate with each other, including "peacing" each other using particular words that, if not used properly, could indicate that a person is falsely claiming to be a member (which could lead to violence). There was no formal ceremony to join the Gang, but a young man who sought to join must have generally brought his "resume" of acts of violence in order to gain admission.

In addition to its narcotics trafficking, 2Fly members and associates engaged in acts of violence, including shootings, stabbings, robberies, and gang assaults. Members who engaged in a sufficient amount of violence could earn a leadership position, the highest of which were called

"Big Guns." Members who "have the Big Gun" were permitted to recruit others into the Gang and order acts of violence.

Members of 2Fly bragged about the Gang and their narcotics trafficking and violence on social media sites, such as Facebook and YouTube. Briefly, by way of example, in a video entitled "Maddog, Bay Kay & Slimmy- Bang Bang," which was uploaded onto YouTube, 2Fly member Bowlin Wallingford, a/k/a "BK," a/k/a "Bay Kay," performs a rap song. During the video, Wallingford states, in substance and in part, that he is "being a brick pusher," which is a reference to distributing significant quantities of cocaine or crack cocaine. Wallingford also raps, in substance and in part, "with my gun unit behind me, ain't no way you can stop me," which is a reference to members of 2Fly who carry firearms in furtherance of 2Fly drug trafficking. At a different portion in the video, 2Fly member Sean McIntosh, a/k/a "Slimmy," raps that "Bay Kay on his cell, he's probably doing the chop now," which is a reference to Wallingford's preparation of cocaine into crack cocaine for sale, and his use of his cellphone to receive calls from narcotics customers. Similarly, in a video uploaded onto YouTube where McIntosh is the main rapper entitled "My Shootaz, Slimmy," the first shot is a graphic of the city skyline with the words "2Fly City" underneath it. During the video, McIntosh states, among other things: "2 Fly, 2Fly, Nigga, I got much respect for my shooters," and features an unidentified male holding a gun. McIntosh also states: "I'm YG." Facebook postings and rap videos were not merely for show, however; they represented a way for rival gangs to communicate with each other and thereby inflamed gang rivalries.

Many of the acts of violence related to the longstanding rivalry between BMB and 2Fly. 2Fly also has developed rivalries with other street gangs in the northern Bronx, including the "Slut Gang" based in the Boston-Secor housing development. Among other things, 2Fly

members developed a practice of going "mobbing," meaning to gather in large groups and travel to the base of operations of a rival Gang to engage in violence there. Members of rival Gangs also sometimes went "mobbing" and attacked or attempted to attack 2Fly at its base of operations at ECG. The relatively close proximity of the BMB and Slut Gang bases contributed to the frequency of acts of violence.

### C. Walker's Role in the Gang

Walker was a member of 2Fly. He did not hold a leadership position in the Gang. Rather, he was a low-level "soldier," tasked with carrying out the orders of higher-level members. In that regard, on May 15, 2013, along with fellow 2Fly members Kevin Mattison, a/k/a "Kev," Rodrigo Gonzalez, a/k/a "Frenchy," and Joshua Brown, a/k/a "Josh," Walker participated in an attack on a member of BMB on a public bus in the Bronx. The 2Fly members used their fists and were armed with a bat and knives. The bus was filled to capacity with other passengers, ranging from young children to the elderly, who were in fear for their safety.

That was not Walker's only brush with the law as a member of 2Fly. On February 27, 2013, he was arrested at ECG with two knives, each over four inches long, after police responded to a report of an assault in progress. On June 12, 2013, he was arrested near ECG smoking marijuana on a public sidewalk. Walker also proclaimed his membership in the Gang on Facebook. On March 28, 2015, he posted "It's a 2Fly." On November 22, 2015, he posted "All my n****s Flying," which is also a reference to the Gang.

Walker was fully cognizant of the severity of the violence committed by the Gang. On October 5, 2013, at ECG, BMB associate Donville Simpson was killed by 2Fly member Jaquan McIntosh, a/k/a "BJ," during a shootout. McIntosh's brother, Sean McIntosh, a/k/a "Slimmy," was present for the shooting and was himself shot in the crossfire. Walker was arrested on an

5

outstanding warrant 5 days after the murder, and made the following statement to law enforcement, in substance and in part: "[Walker] received word from a friend that his friend Slimmy had been shot in the projects.  He states that he also heard that another individual who was unknown to him was also shot during this incident and was killed.  He states that he heard that the person who was killed was from Boston Road and was a Blamma gang affiliate.[1]  He informed me further that this was an ongoing beef between Blamma gang and ECG and it's a way of life."

## II.     The Defendant's Criminal History

Walker has no prior criminal convictions.

## III.    The PSR and Guidelines Calculation

In keeping with the plea agreement between the parties, the PSR calculates the defendant's total offense level as 16.  In Criminal History Category I, Walker's sentencing Guidelines range is 21 to 27 months' imprisonment.

### 3553(a) ARGUMENT

For the reasons that follow, a sentence within the Guidelines range is necessary to meet the statutory sentencing factors, in particular to provide just punishment and afford adequate deterrence to criminal conduct.

Walker was a member of 2Fly, a violent street gang that terrorized a public housing development where law abiding citizens were trying to live a peaceful life.  They took control of a playground where children were supposed to play in safety, transforming it instead into an open air drug market and a storage place for guns—not to mention a target for rival street gangs.  Walker committed at least one act of violence with the Gang, attacking a rival gang member on a

---

[1] "Blamma" is a group associated with BMB.

public bus and terrifying children and the elderly on their daily commute. He was also arrested with knives at ECG.

Walker asks for a downward variance to a probationary sentence, which would amount to a term of imprisonment of less than 6 months. However, there is no basis for a variance in this case, much less a variance of this length.

There is no dispute that Walker was a low-level member of the Gang or that he is relatively less culpable than most of his co-defendants; the Government is unaware of any attempted murders or murders committed by Walker, and he does not appear to have personally sold drugs. But this, like his lack of criminal convictions, is already reflected in Walker's low Guidelines range—the lowest Guidelines range possible for a defendant pleading guilty to racketeering conspiracy. There is also nothing particularly mitigating in Walker's background that would suggest a downward variance is appropriate. (*See* PSR ¶¶ 67-72.)

With respect to the question of specific deterrence, the Government notes that Walker merits particular credit for acceptance of responsibility; he pled guilty very early in the case, saving judicial and Governmental resources and indicating that he may intend to change his ways. However, general deterrence is paramount here. In order to deter young men from joining violent gangs like 2Fly, the Court should send the message that gang membership and gang violence will be treated severely by the Courts.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the range of 21 to 27 months.

Dated: New York, New York
November 9, 2016

Respectfully submitted,

PREET BHARARA,
United States Attorney for the
Southern District of New York,

By: __/s/_____
Rachel Maimin
Micah W.J. Smith
Hagan Scotten
Jessica Feinstein
Drew Johnson-Skinner
Assistant United States Attorneys
(212) 637-2460

8