# PATRICK J. JOYCE, ESQ.

Attorney at Law
658 Ridgewood Road
Maplewood, NJ 07040
(973) 324-2711
FAX (973) 996-2581

New York Office:
70 Lafayette Street - 2nd Fl
New York, NY 10013
(212) 285-2299

November 9, 2016

Honorable Lewis Kaplan
United States District Judge
United States District Court
Southern District of New York
New York, New York

Re:    **United States v. Damon Parrish**
          **16 Cr. 212**

Dear Judge Kaplan,

     I am the attorney for Damon Parrish, the defendant in the above-referenced matter. Mr. Parrish pleaded guilty on July 25, 2016, and in his allocution to the Court he acknowledged his criminal conduct. He is scheduled to be sentenced before Your Honor on November 15, 2016. This letter-brief is respectfully submitted, in lieu of a more formal submission, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, in an attempt to advise the Court of several matters which the defendant will raise at the time of his sentence, which hopefully will aid in the determination of an appropriate sentence. At the time of the sentence the defendant will request the court to sentence him to a period of incarceration of Time Served, followed by Five (5) years of Probation.

## THE PRE-SENTENCE REPORT GUIDELINE CALCULATION

     The Pre-Sentence Report accurately points out that Mr. Parrish has pleaded guilty to Count Two (2) of the Indictment which charges him with violating 21 USC §§ 846, 841 (b)(1)(c). The report also accurately places Mr. Parrish in a Criminal History Category I. (PSR ¶ 64). The report calculates an adjusted offense level of Twenty – One ( 21), which carries with it a suggested Guideline sentence range of 37 – 46 months. Significantly, the report indicates Mr. Parrish plead guilty to a lesser included count under the Second Count of the Indictment. Accordingly, the court is free to impose an appropriate sentence, while not being hampered by any mandatory sentencing schemes of 21 USC 841.

1

## THE GUIDELINE CALCULATION AND ATTENDANT SENTENCE RANGE
## ARE NOT BINDING ON THIS COURT

As the Court is fully aware, the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) overturned the mandatory nature of the Guidelines and replaced them with a mandatory statute, 18 USC § 3553. The factors outlined in § 3553(a) require that a sentence be not greater than necessary to satisfy the need for just punishment, respect for the law, deterrence, prevention of further crimes, treatment and training. In light of these factors, Mr. Parrish respectfully submits that the requested sentence satisfies these requirements even though it is below what the Guidelines suggest.

Section 3553(a) is referred to in Booker and much post-Booker case law as containing various "factors" – one of which is the Guidelines -- that must now be considered in determining a sentence. This is a misleading oversimplification. Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of § 3553(a) and the "factors" to be considered in fulfilling that mandate. The sentencing mandate contains a limiting principle favorable to defendants and is the overriding principle that limits the sentence a Court may impose.

The overriding principle and basic mandate of § 3553(a) requires District Courts to impose sentences "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in § 3553(a)(2). The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another "factor" to be considered along with the others set forth in Section 3553(a) (discussed below) – it sets an independent limit on the sentence a Court may impose. See United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989). Since § 3553(a) requires a sentence to be no greater than necessary to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those purposes is reversible, even if it is within the suggested Guideline range. Id.

In addition, the Guidelines are flawed in their construction by the fact that the Guideline range is constructed almost solely of *aggravating* factors. The only mitigating factors are acceptance of responsibility points and role in the offense. Mitigating factors are not part of the Guideline range and the policy statements attached to the Guidelines highly discourage the use of mitigating factors as a basis for *departure*.

Thus, since the Supreme Court's decision in Booker the case law is clear that although a Guideline calculation is a necessary beginning point of any sentence consideration, it should not be the final arbiter of what a reasonable and just sentence should be. The case law has also made it clear that a Court can deviate from the Guidelines if it feels that they require a sentence that is greater than necessary to satisfy the factors of § 3553. The Supreme Court has urged each sentencing Court to consider **all** mitigating factors and to reject policy statements of the Guidelines that restrict the use of mitigating factors. See United States v. Rita, 551 U.S. 338 (2007) and United States v. Gall, 552 U.S. at 50 n.6, 58-60 (2007). Gall at 59 n.11 requires that a sentencing Court consider all "kinds of sentences available" under § 3553 even if the Guidelines only recommend a prison sentence. In fact Courts are now invited to consider arguments that the applicable Guidelines fail properly to reflect § 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless of the Guidelines. See Rita, 127 S.Ct. at 2465. Courts "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," Kimbrough, 128 S.Ct. at 570 (internal quotation marks omitted), and

2

when they do, the Courts of Appeals may not "grant greater fact-finding leeway to [the Commission] than to [the] district judge." Rita, 127 S.Ct. at 2463.

In Kimbrough v. U.S., 128 S.Ct. 558 (2007), the Court affirmed a District Court's decision to deviate from the Guideline's 100-1 "cocaine base" ratio in sentencing a defendant. In Gall v. United States 128 S. Ct. 586 (2007) the Court ruled that a District Court's non-guideline sentence did not involve an abuse of discretion and therefore could not be invalidated on appellate review. The common thread running through these cases is that a District Court is bound only by the factors contained in 18 USC § 3553. In admonishing the appellate court in Gall, the Court stated, "But it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable. On abuse of discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." United States v. Gall, supra at *12.

## 18 USC § 3553 FACTORS

In determining the sentence minimally sufficient to comply with § 3553(a), the Court must consider several factors contained therein, including (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed,"; and (6) "the need to avoid unwarranted sentencing disparity". See 18 U.S.C. § 3553(a)(1), (2), (6).

### 1. Nature and Circumstances of the Offense and the History of the Defendant

When the Court considers the nature and circumstances of the offense and the history and characteristics of Mr. Parrish it will become clear the requested sentence is appropriate. The PSR detailed numerous factors that indicate why Mr. Parrish should be treated with leniency. The report documents the work history (PSR ¶¶ 84-85) of Mr. Parrish as well as his family support network. (PSR ¶¶ 71-74). All indications from this report point to the inescapable conclusion that this criminal event was committed by an individual who, while acting as the emotional and financial backbone for an entire extended family, engaged in selling marijuana in an attempt to reverse a dire economic situation.

Portions of the PSR are extremely instructive when the Court considers Mr. Parrish's character. Mr. Parrish has maintained a great relationship with his family members (¶ 75) and it is reported that he speaks with his family daily.

Attached to this submission are letters of support from family members and those with whom he has worked. The authors of these letters of support portray a man who continues to work hard, who showed love and affection to his family and who must now confront the consequences of this major error in judgment. All reports indicate first and foremost that Mr. Parrish has been and will continue to be a devoted and caring family member. The lives of his wife and children have been completely disrupted by his pending incarceration. Mr. Parrish has continually stated that the pain he has caused these family members is a consequence of his actions, which he will always regret. He concedes that he owes a debt to society for committing a crime, but knows that every day he spends in jail is extremely detrimental to his family's well-being.

## 2. The Need for the Sentence Imposed

In addressing this subsection the Court should consider, among other things, the effect the sentence will have upon deterrence, and prevention of further crimes. The defendant respectfully submits that when these factors are considered the requested sentence becomes obviously appropriate.

Section 3553(a) requires a sentencing Court to consider deterrence, both general and specific. As to specific deterrence, I have previously informed the Court of how this arrest has affected Mr. Parrish and that his arrest and subsequent incarceration have seared into his mind the quest to live a law-abiding life and to repay society for the harms he has caused. However, I would add to those facts the analysis provided by some empirical studies that have been conducted by specialists in this area that support the proposition that Mr. Parrish will lead a law-abiding life once released from prison. The studies have considered many factors in determining which defendants are most likely to become recidivists. See USSC, *Measuring Recididivism* (2004).

One factor to be considered is age. The studies have demonstrated that recidivism declines dramatically with age. While a person under 21 has a 35.5% chance of committing another crime, this percentage drops precipitously for a person of Mr. Parrish's age (48 years-old).

Another factor considered is employment. The studies have demonstrated that if a person has maintained stable employment in the past the recidivism rate drastically lowers. Mr. Parrish has maintained steady employment throughout his life. Thus, this factor points to a lower chance of future illegal behavior.

Researchers have also considered family connections as an important factor when measuring the chance of recidivism. The studies have observed that if a person has been married and has close ties to his present family members the chance of recidivism is lowered. Here, Mr. Parrish is involved in a 20 year relationship and is a father of four. His is very close to all his children and is closely connected to his siblings. His wife, his children and his siblings, have all been very supportive of Mr. Parrish throughout this ordeal. They have been in constant communication with me and have stated a desire to be there for Mr. Parrish once he is released from custody and help him reintegrate into society. This would indicate that Mr. Parrish is not regarded as a high risk to become a recidivist.

A final factor is whether the offender is charged with a violent or non-violent crime. The studies have proven that a person sentenced under the fraud, larceny and **narcotic** Guidelines are the least likely to recidivate. Here, there are no violent acts associated with Mr. Parrish and thus, he is not considered a high risk to recidivate.

When these factors are considered in their entirety it is clear that Mr. Parrish falls into the category of individuals who are least likely to recidivate. Therefore, not only does his personal history demonstrate a low chance of recidivism on his part, the empirical studies conducted by the experts in the field indicate that he has a very low chance to commit new crimes upon his release from jail. When this is combined with the fact that Mr. Parrish will also be on supervised release for many years after his release from prison and thus be within the control of this Court and Probation the chances of Mr. Parrish committing new crimes is minimal.

A Sentencing Court must also consider "general deterrence" when deciding a sentence. Here again the experts have conducted many studies and they have routinely found that there is **no** empirical relationship between sentence length and specific or general deterrence. In all categories of crime from white-collar to drug offenses, severe sentences have proven **not** to deter crime. The studies have shown however that lengthy sentences do increase the rate of recidivism. See Lynne M. Vieraltis et. al., *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002*, 6 Criminology & Pub. Pol'y 589, 591-93 (2007), U.S. Sent'g Comm'n Staff Discussion Paper, *Sentencing Options under the Guidelines* 18-19 (Nov.1996), available at http://www.ussc.gov/SIMPLE/sentopt.htm, Miles D. Harer, *Do Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes?*, 7 Fed. Sent. Rep 22 (1994).

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the scientific research shows no relationship between sentence length and deterrence. The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one. But the question for this Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime. Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while **certainty** of punishment has a deterrent effect, "increases in severity of punishments **do not** yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).

The fact that "general deterrence" is not relevant to people who are considering committing crimes is best demonstrated by the studies of white-collar crimes. For purposes of argument it can be rationally presumed that the white-collar criminal is the most rational of criminal offenders. That if any criminal offenders were going to consider all of the pluses and minuses of committing a criminal act, a white-collar criminal would be most likely to indulge in that type of thinking. However, the studies show that there is no difference in the deterrence factor between probation and imprisonment for white-collar offenders. That is, offenders given terms of probation were no more or less likely to reoffend than those given prison sentences. See David Weisburd et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995).

This has proven true even in narcotics cases. In a very recent study of drug offenders sentenced in the District of Columbia, researchers tracked over a thousand offenders whose sentences varied substantially in terms of prison and probation time. See Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, (October 28, 2009); Criminology (May 2010). The results showed that variations in prison and probation time "have no detectable effect on rates of re-arrest." "Those assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame." In other words, "at least among those facing drug-related charges, incarceration and supervision seem not to deter subsequent criminal behavior." Id.

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the manner one might expect of rational decision makers.

See Tonry, *Purposes and Functions of Sentencing*, *supra*, at 28-29. A recent review of this issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." See Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." See USSC, Measuring Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf. State law enforcement officials at the Commission's recent hearing confirmed the research results. Chief John Timoney of the Miami Police Department testified that the deterrent effect of the federal system is not its high sentences but the certainty that there will be punishment. Mr. Parrish will express to this Court in his statement that he has learned the lesson that society does not accept criminal behavior and if he ever involves himself in transporting narcotics again, he will be excluded from society. Mr. Parrish has lived excluded from society and all the freedoms it brings for many months and has learned that if he persists in pedaling narcotics he will be placed behind bars again. Prison time has had its effect on Mr. Parrish. He knows if he returns to criminal conduct his sentence will be severe and he is determined to not let that occur, he values life outside of jail too much at this point.

Courts have also begun to take into consideration the lack of effect of "general deterrence". In United States v. Beiermann, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009), the Sentencing Court, after reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, concluded that "there is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of." See id. This Court, in considering what sentence Mr. Parrish should receive for his conduct, must of course consider "general deterrence" but based on the above studies it is respectfully submitted that this Court should consider "specific deterrence" to a greater degree than "general deterrence".

When considered under these parameters Mr. Parrish respectfully submits that the requested sentence of Time Served followed by Five (5) years of Probation sufficiently meets both the requirements of specific and general deterrence. This sentence requires the defendant to spend a considerable amount of time in jail. It cannot be said that he was not punished for his acts but also counters the desire to more severely punish Mr. Parrish. The studies cited and Mr. Parrish's own personal history demonstrate that Mr. Parrish has a very good chance to lead a law-abiding life from here on and has been deterred from committing any new crimes.

## 6. The Need to Avoid Sentencing Disparity

There are several co-defendants in this case. None, if any, are similarly situated with Mr. Parrish. At age 46, Mr. Parrish has worked as a maintenance man for thirteen (13) years. After

raising his family in an apartment on Gun Hill Road for 17 years, economic circumstances arose which resulted in Mr. Parrish and his family being forced into living in a homeless shelter. In April 2015, Mr. Parrish and his family were able to move into 1649 Taylor Avenue in the Bronx. Mr. Parrish is not leading an extravagant lifestyle. The apartment he lives in is neat and moderately furnished. He and his wife share a bedroom with their infant son, so their teenage daughter may have her own room. His involvement in this case represents his ill-conceived plan to keep his family from returning to a homeless shelter.

## CONCLUSION

The object of this letter is to give this Court some insight into how and why Mr. Parrish finds himself before Your Honor awaiting the pronouncement of sentence, and what sentence given the varied sentencing options the Court has at its disposal best accomplishes the goals of a Sentencing Court. It is the defendant's position that after considering all of the relevant factors of Mr. Parrish's situation, the law as it is today, and the empirical studies done in this area, the sentence requested would be reasonable. This sentence would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct. 558, 571, 169 L.Ed 481 (2007). By contrast, a Guideline sentence would be inappropriate in this case. As previously stated, "no chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula." United States v. Coughlin, No. 6 Cr. 20005, 2008 WL 313099 (W.D. Ark Feb.1, 2008).

In Gall the District Court sentenced the defendant to a period of probation. The Guidelines had suggested a sentence of from 30-37 months. The District Court there commented on the defendant's efforts at rehabilitation during the period of time between the commission of the crime and the sentence date. The Eighth Circuit determined that the sentence was an "extraordinary" variance from the Guidelines, found that the sentence was not justified and remanded for re-sentence. The United States Supreme Court disagreed. Finding that the Circuit Court's analysis was constitutionally flawed, the Court reemphasized the position that the role of the Guidelines is merely advisory. As in Gall, the Court here is presented with an individual who has been sufficiently punished and who will now begin to live a new chapter of his life.

Respectfully submitted,

Patrick Joyce