**EPSTEIN & WEIL, LLC**
ATTORNEYS AT LAW

(212) 732-4888

225 Broadway
New York, New York 10007

LLOYD EPSTEIN
JUDITH H. WEIL

December 6, 2016

**VIA ECF**
Hon. Lewis A. Kaplan
United States District Judge
500 Pearl Street
New York, NY 10007

**Re: United States v. Parrish (Courtney Green)**
**Dkt. No. 16-CR-212 (LAK)**
**SENTENCING MEMORANDUM**

Dear Judge Kaplan:

Courtney Green, 30, is scheduled to appear before the Court on December 20, 2016 for sentencing on his plea of guilty to Possession of Marijuana with Intent to Distribute under 21 U.S.C. §841(B)(1)©. The Pre-sentence Report ("PSR") recommends a sentence of time served (28 days), three years supervised release, 160 hours community service, and a $5,000 fine, despite Sentencing Guidelines calling for a custodial sentence of 24 to 30 months (PSR, p. 29). The Probation Department's justification for this recommendation is succinct and convincing.

> Green is currently enrolled in school, owns a business, and has supplemental employment. The defendant's education and employment history prove that he can be a productive member of society and lead a law-abiding life.
>
> In careful consideration of the defendant's lack of criminal history and personal characteristics, we do not believe a custodial sentence is warranted in this case. Green has been successful under community-based supervision and maintains employment and positive familial relationships (PSR, p. 30).

I respectfully request the Court to adopt the Probation Department's reasoning and impose the recommended sentence.





**Courtney at Staples**



**Courtney at Bronx Community College**

*Cracking the Work Culture: Courtney Works Nights at Staples, Studies at Bronx Community College During the Day, and Learns to Value Perseverance and Discipline*

It was a Saturday morning, at about 3:00 a.m. at Staples – the "More Than Office Supplies" store, at 465 Tuckahoe Road in Yonkers, NY. The store was only twenty-five minutes by car from Courtney's neighborhood in the Bronx, but could not be more different. Outside the store, nothing was happening. The only action was inside.

Courtney was stocking the school supplies, binding the empty cartons, and about to sweep up. He had never imagined that working a 9:00 to 5:00 type job would make him feel free, especially when the hours were really 10:00 p.m. to 6:00 a.m.[1] He certainly never imagined that he would appreciate the value of this type of work. Courtney always imagined

[1]A sample copy of Mr. Green's Staples work scheduled and his pay stubs are attached as Exhibit A.

that freedom meant singing on the stage, writing music whenever the spirit moved him, and ignoring the alarm clock in the morning. Staples was heaven compared to the MDC.

Courtney often wondered why his music business never took off. Everyone told him he was imaginative, creative and talented, but Courtney always felt that stupid stuff got in the way. So what if he arrived late for a rehearsal, missed an appointment, or was late? Courtney never understood why this turned off customers and the more serious recording artists. Staples gave him a different perspective on what was trivial and what made for success. Not that he really liked packing, shelving, or sweeping the floors. But Staples taught him how the world really worked, and Courtney wanted to apply this lesson to bigger things.

Upon his release on bond, in addition to finding work at Staples, Courtney enrolled at Bronx Community College. He wrote a research paper on the success of Walt Disney and the Disney empire. Courtney had never appreciated how sweat, persistence, and the sheer ability to show up on time every day are as important to success as creativity and imagination. This failure to appreciate, Courtney realized, was probably what led to his seeking "easy money" by selling bags of marijuana. Courtney learned that Disney was successful because Walt Disney and his successors demonstrated by example how the company expected work to be done, and that it was discipline that enabled the company to keep its magic alive decade after decade.

> Disney has its own culture for the company. At Disney everyone knows their role. Before getting on board with the company, potential employees (cast) are informed on what is expected of them along with duties as a cast member. If the culture is not followed or understood then Disney is not the fit for you. This company has a very specific way they want things done and the way it's been run has been keeping the Disney magic alive.[2]

What Courtney learned about Disney in books, he saw on the shopping floors, in the backrooms, and in the uniforms at Staples. Staples didn't produce magic, but it produced a successful product. Courtney saw how Staple's culture expressed itself in its displays, in its stockroom, its supplies, and even in the punch clock. He saw how management conducted

---

[2] *The Walt Disney Company*, by Courtney Green, Essay for Business 51, Bronx Community College, Fall, 2016, annexed as Exhibit B. Mr. Green's grade for this paper was a 10 out of 10, the highest possible score.

itself, and how the employees responded. The more Courtney worked, the more his eyes were opened, and the more ambitious he became.

*Twenty-eight Days at the MDC Served as a Wake-up Call for Mr. Green. Pre-trial Services and Mr. Green's Friends Made Sure That He Answered the Call Every Day.*

Courtney hadn't always looked at it this way. Things changed after the twenty-eight days he was incarcerated at the MDC. Those were the longest twenty-eight days his life. His friends said that Courtney's incarceration served as a real wake-up call. Courtney didn't disagree, but he knew that the real wake-up call occurred after he was released. Home incarceration wasn't easy, especially for someone who was used to hanging out on the streets at all different hours and not having to answer to anyone. He visited with his friends on his schedule, not his, and having a probation officer time him with a stopwatch every time he left to visit his attorney, or the doctor, or attend a function at his daughter's school was not a pleasure. He soon discovered who his true friends were, and what it was like to comply with a schedule. That was the real wake-up call.

One of the first friends to drop by was Franklyn R. Greenaway, a full-time union electrician, who had recorded music part-time with Courtney for many years. The next day Courtney was visited by Jonathan Headley, a construction worker for Local 8. They were followed by Lauren Bayne, a retired construction worker who was the Director of the Love Soup Kitchen at St. Peter's Episcopal Church on Westchester Avenue in the Bronx, as well as the mother of Courtney's girlfriend. Later, Luciana Brown, a fourteen-year veteran officer for MTA Bridges and Tunnels Authority dropped in along with Courtney's former wife, Natalee Green, a full time nursing student at Lehman college and a part time clerk for Better Rate Movers. Natalee told Courtney how much Casey, their four year old daughter, missed him while he was incarcerated, and she brought Casey to visit almost every day after Courtney was released. Soon came Gabriel Grant, a Local 1 union plumber with whom Courtney always talked about music, and Luis Santiago, a Department of Health employee who spent his spare time as the CEO of an independent music production company.[3]

All of Courtney's friends gave him the same message. He had to learn a little bit more about business and a lot more about work. Otherwise his music business would never succeed. Courtney was talented, but nobody, no matter how talented, succeeded on talent

---

[3]I annex as Exhibit C reference letters from Franklyn R. Greenaway, Jonathan Headley, Lauren Bayne, Gabriel Grant, a Local 1 union, Luis Santiago, Netfa Smith, Rufus Greenaway, and Sgt. Faure.

alone. Courtney's mother, Mandy Green, offered to help with tuition if Courtney returned to school.[4]

Courtney never liked schedules, and he knew that if he found a job or enrolled in school, pre-trial services would be strict. His pre-trial service officer reminded Courtney at almost every meeting that he would always check to confirm that Courtney did not leave the house too early for school or that he didn't arrive late when driving home from work. Courtney was couldn't tell whether he felt more annoyed or terrified. But Courtney was stir crazy after a week of being locked up in his mother's house. There only so much time a person could spend watching television or playing video games. Soon, Courtney found a job at Staples and enrolled himself in Bronx Community College.

For the first few weeks, Courtney kept to his schedules out of sheer fear. He did not want to be violated. His probation officer repeated the same mantra every time they met. Courtney couldn't be late for school, or there would be consequences. He couldn't be late for work. He couldn't be late coming home from school. He couldn't be late for reporting to his pre-trial service officer. Courtney was scared. He had never successfully managed his schedule before, and he did not want to be remanded to the MDC for not doing so now.

It took several weeks for Courtney to realize that the pressure he received from his pre-trial services officer was one of the best things that ever happened to him. His manager at Staples commended him for always being on time. He never he missed the first ten minutes of a lecture, and made sure to register for the Spring Semester at Bronx Community *on time* even though he knew there was a distinct possibility that the Court might sentence him to jail and he would not be able to attend.[5] If going to jail for twenty-eight days was a wake-up call, Courtney was thankful that his pre-trial service officer served as his the daily alarm clock.

---

[4]A letter from Mrs. Mandy Green is annexed as Exhibit D.

[5]I annex as Exhibit E a copy of Mr. Green's grades for the first half of the Fall semester, and his proposed academic schedule for the Spring semester.






**Courtney at Staples** **Courtney in center**

*"The Easiest Part of Weight Loss Is the Planning, the Hardest Part Is Actually Losing Weight."*

> **Getting the Weight Off**, by Courtney Green, Essay for English 11, Bronx Community College, September 19, 2016 (Prof. Christiana Valkraine)

When Courtney wrote his paper on weight loss for Prof. Valkraine's English class, he was thinking as much about the message he received from his friends, his pre-trial officer, and his family all of whom were pushing him as he was about dieting. In the past, Courtney had always thought big, but never really succeeded. He now understood the problem and was determined to fix it. In his paper, for which he received a grade of "A+", Courtney wrote:

> "The easiest part of weight loss is the planning, the hardest part is actually losing the weight. . . Many people think that going to the gym once a week will do the trick but that is not so. It's like

> going to school, you don't go once a week you go every day for several hours. . ."[6]

*Courtney Green Is Central to His Family*

Natalee Green was not happy when her marriage with Courtney broke up. Not that the relationship was perfect, but she felt that their daughter Casey needed a full-time father. Natalee knew the difficulties of a single parent home, and was afraid of what might happen if Casey were raised without a father figure.

As it turned out, there was nothing to fear. No matter what Courtney's relationship was with Natalee, Casey remained at the core of his life. His visited her several times a week at Natalee's, took her to his mother's house and the park on other days, and attended every school event. During his twenty-eight days in jail, Courtney called everyday, and when he was released there was nothing he didn't do for Casey within the limitations of his bond. In Ms. Green's words, the bond between Casey and Courtney is strong.

> I am asking for leniency on [Courtney's] sentence as he's very much attached to his daughter, and with him being away would affect her very much and also the rest of this family.[7]

---

[6]I attach a copy Mr. Green's essay as Exhibit F. This is the original copy which contains Prof. Valkraine's comments and Mr. Green's grade.

[7]A letter from Natalee Green is annexed as Exhibit G.



**Courtney and Casey**

Luciana Brown, a close friend of Mr. Green's family and a fourteen year veteran with the MTA Bridges and Tunnels Authority, confirms the close bond between Courtney and his daughter:

> If [Courtney] is incarcerated that will keep him away from his daughter Casey. I really don't think either of them will be able to handle it. They are inseparable. If he goes to the store and he doesn't take her she's crying her eyes out. The look on his face is pure devastation. I'm pretty sure I've caught him crying as well.[8]

*There Are No Objections to the PSR*

I have reviewed the PSR with Mr. Green, and we have no objections either to its factual recitation or its calculation of Mr. Green's Sentencing Guidelines.

---

[8] A reference letter from Ms. Brown is annexed as Exhibit H.

*The Court Should Follow the Probation Department's Recommendation and Impose a Sentence of Time Served and Supervised Release*

Since Mr. Green's release on bond, he has held a good job at Staples, achieved excellent grades at Bronx Community College, and shown himself to be a wonderful father. His conduct on pre-trial release has been exemplary. "Josh Rothman [Mr. Green's pre-trial service office] reports that he has complied with all conditions of release: drug testing, home detention, reports in person and on internet, home detention enforced by location monitoring" (PSR ¶10).

18 U.S.C. §3553(a) sets forth the factors that a sentencing court must consider in determining a just sentence. Among the factors which a court must consider are the nature and circumstances of the offense, any need for rehabilitation, and the need for retribution or punishment. 18 U.S.C. §3553(a)(2)(D).[9] The "parsimony" clause expressly requires the

---

[9]The relevant 18 U.S.C. §3553(a) factors are:

> (1) the nature and circumstances of the offense, and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence from criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
> > (A) the applicable category of offense committed by the applicable category of the defendant as set forth in the guidelines ...;

court to "impose a sentence sufficient, but not greater than necessary, to comply with" these factors. *Kimbrough v. United States*, 552 U.S. 85 ( 2007).

Although the Sentencing Guidelines ordinarily are "the starting point and the initial benchmark" for determining sentence, *Gall v. United States*, 552 U.S. 38, 49 (2007)(citation omitted), a sentencing court may reject Guidelines under circumstances the other factors set forth in 18 U.S.C. §3553(a) weigh more heavily. The Supreme Court has observed that evidence of the defendant's rehabilitation is an especially important factor to be considered at sentence, and will, under the appropriate circumstances, outweigh any Guidelines calculations. Rehabilitation is relevant to determining the defendant's basic character, the need to promote respect for the law, and any need to protect the public. *Pepper v. United States*, 562 U.S. 476, 481 (2011).

Courts have frequently imposed non-jail sentences where the defendant has a strong work history, and incarceration would deprive society of a valuable contributor. *United States v. Cole, 765 F.3d 884* (8th Cir. 2014); *United States v. Tomko*, 562 F.3d 558, 571 (3d Cir. 2009); *United States v. Ruff*, 535 F.3d 999, 1001 (9th Cir. 2008); *United States v. Maier*, 975 F.2d 944 (2d Cir. 1992). A strong work-ethic strongly suggests that the likelihood of recidivism is minimal. *United States v. Zimmerman*, 2012 U.S. Dist. LEXIS 85046, 17-19 (E.D.N.Y. 2012)(positive post-crime work record indicates an unlikelihood of recidivism and is a basis for a probationary sentence).

The Court should follow the Probation Department's recommendation and impose a sentence of time served, three years supervised release, community service, and a small fine. Under the guidance of a probation officer, Mr. Green has shown that he has the ability, intelligence, and desire to be a contributing member of society. A term of probation will enable Mr. Green to continue in this direction. Any term of incarceration will interrupt his education and strongly diminish his chances of maintaining good employment. This runs counter to the public interest. There is no legitimate sentencing goal that will be furthered by returning Mr. Green to prison.

I thank the Court for its consideration. Please feel free to have your Chambers call me if you have any questions.

Sincerely,

Lloyd Epstein

LE:pc
Enc.

cc. AUSA Rachel Maimin
(Via ECF and UPS Overnight Mail)

USPO Nichole Brown-Morin
(VIA UPS Overnight Mail)

Mr. Courtney Green