**MIEDEL & MYSLIWIEC LLP**
111 BROADWAY, SUITE 1401
NEW YORK, NEW YORK 10006
Telephone: (212) 616-3042
Fax: (800) 507-8507
fmam@fmamlaw.com

Florian Miedel, Esq.                                             Aaron J. Mysliwiec, Esq.

February 15, 2017

**BY ECF**

Hon. Lewis A. Kaplan
United States District Judge                    **SENTENCING**
United States District Court                    **MEMORANDUM**
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:  *United States v. Kareem Sanders*
         16-cr-212 (LAK)

Dear Judge Kaplan:

  Kareem Sanders is a 26-year-old man who made a devastatingly poor decision to distribute marijuana. He has profound remorse for that decision and its consequences, and takes full responsibility for his actions. The offenses he committed are only part of the story about who Mr. Sanders is. Letter after letter written on his behalf – not only from relatives and close friends, but also from neighbors and acquaintances– characterize Mr. Sanders as a respectful, helpful young person and an active member of his community.

  Mr. Sanders pleaded guilty to participating in a racketeering conspiracy, in violation of Title 18 United States Code, Section 1962 (d). With respect to his underlying racketeering activity conduct, he pleaded guilty to distributing between 40 kilograms, but less than 60 kilograms, of marijuana. As Mr. Sanders has no criminal record, the 8-month term of incarceration he has already served would amply satisfy deterrence concerns and punishment for his conduct. For this reason, in addition to the relatively limited scope of Mr. Sanders's offense conduct within the indictment at large, I respectfully request that Mr. Sanders be sentenced to time served and a period of supervised release. It is my sincere belief that such a sentence would be "sufficient but not greater than necessary" to achieve the goals of sentencing listed in 18 United States Code, Section 3553(a).

  A sentence of time served and a period of supervised release would be appropriate for Mr. Sanders for the following reasons:

- Mr. Sanders has a supportive family and community, significant employment history, educational credentials, and further educational and work aspirations, all of which will assist Mr. Sanders in transitioning to a law-abiding life;

- Relative to the scope of the indictment charging him and his codefendants, Mr. Sanders's role in the conspiracy was limited, and codefendants with comparable circumstances have been sentenced to time served and a period of supervised release;

- Mr. Sanders has not previously served jail time. For this reason and others discussed in more depth below, the 8 months' incarceration he has served in this case achieves the punishment and deterrence purposes of sentencing.

**I.**     ***Mr. Sanders's Sentencing Range & the Principles Governing Federal Sentencing Since* United States v. Booker, *543 U.S. 220 (2005) Support a Sentence of Time Served***

Mr. Sanders pleaded guilty to participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d). The underlying racketeering activity to which he pleaded guilty was a narcotics conspiracy, and Mr. Sanders was responsible for distributing between 40 and 60 kilograms of marijuana.

**A.     The Plea Agreement Set Forth a Stipulated Guidelines Range of 21 to 27 Months' Incarceration**

The November 30, 2016 Plea Agreement between Mr. Sanders and the government calculated a total offense level of 16, and placed him in Criminal History Category I, resulting in an advisory Guidelines range of 21 to 27 months' imprisonment. The Probation Department conducted its own assessment, and also determined Mr. Sanders's Guidelines range to be 21 to 27 months' imprisonment (see PSR).

The Plea Agreement included the following calculations regarding Mr. Sanders's offense level:

- The offense involved at least 40 but less than 60 kilograms of marijuana. Pursuant to U.S.S.G. 2D1.1(a)(5) and 2D1.1(c)(11), the resulting base level would be 18. However, as the narcotics conspiracy offense was in furtherance of a racketeering conspiracy, the base offense level is 19.

- Assuming the defendant clearly demonstrates acceptance of responsibility to the satisfaction of the Government through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).  Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

2

Therefore, the Plea Agreement set forth the applicable offense level as 16.

The Plea Agreement also noted that Mr. Sanders has no criminal history. Therefore, the Plea Agreement set forth Mr. Sanders's Criminal History Category as I.

The parties also agreed that neither a downward nor an upward departure from the Stipulated Guidelines Range was warranted.  Therefore, neither party will seek any departure or adjustment pursuant to the Guidelines that was not set forth in the Plea Agreement.  Nor will any party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

### B.     This Court Must Also Consider Title 18, United States Code Section 3553(a) Factors

The Guidelines calculation is only part of the analysis for this Court to consider in determining Mr. Sanders's sentence.  In *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229 (2011), the Court *twice* emphasized that a sentencing judge assumes "an overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id*. at 1242, 1243.  *See also United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. 2010) ("[u]nder § 3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. § 3553(a)(2)"), *quoting United States v. Samas,* 561 F.3d 108, 110 (2d Cir. 2009).

As the Second Circuit explained in *Dorvee*:

> [e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the § 3553(a) sentencing factors.  *See* [*United States v.*] *Cavera,* 550 F.3d [180,]189 [(2d Cir. 2008) (*en banc*)].

604 F.3d at 93.  *See also Pepper*, 562 U.S. at 495-96, 131 S. Ct. at 1244-45 (statute – 18 U.S.C. § 3742(g)(2) – precluding consideration, at re-sentencing, of post-sentence rehabilitation was invalid because it had the effect of making the Guidelines mandatory in "an entire set of cases").

Thus, as the Supreme Court declared in *Nelson v. United States*, 550 U.S. 350 (2009), "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  *Id*. at 351 (emphasis in original).[1]  *See also Dorvee*, 604 F.3d at 93 ("[i]n

---

[1]  While the Supreme Court's ruling in *Rita v. United States*, 551 U.S. 338 (2007), established that a within-Guidelines sentence can be presumptively reasonable, *id.* at 347, that presumption is restricted to appellate review and "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  *Id*. at 351 (*citing United States v. Booker*, 543 U.S. 220, 259-60 (2005)).

conducting this review [of the §3553(a) sentencing factors], a district court needs to be mindful of the fact that it is 'emphatically clear' that the 'Guidelines are guidelines – that is, they are truly advisory'"), *quoting Cavera,* 550 F.3d at 189.

Indeed, in *Pepper*, Justice Sotomayor again hearkened back to *Koon v. United States*, 518 U.S. 81 (1996) – as Justice Stevens had in *Rita v. United States*, 551 U.S. 338, 364 (2007) (Stevens, J., *concurring*) – repeating that:

> '[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'

562 U.S. at 487, 131 S. Ct. at 1239-40, *quoting Koon*, 518 U.S. at 113.

Therefore, while sentencing judges must still consider the Guidelines, *see* 18 U.S.C. § 3553(a)(4), nothing in the statute provides any reason to treat that calculation as more controlling of the final sentencing decision than any of the other factors a court must consider under § 3553(a) as a whole. *See United States v. Menyweather*, 431 F.3d 692, 701 (9th Cir. 2005); *United States v. Lake*, 419 F.3d 111, 114 (2d Cir. 2005), *explaining United States v. Crosby*, 397 F.3d 103, 111-13 (2d Cir. 2005).

Thus, here, in light of the analysis and application of the § 3553(a) factors, the Court possesses sufficient discretion to impose a sentence below the Guidelines, if it chooses to adopt the Probation Department's Guidelines calculation. A sentence premised upon analysis of the Guidelines exclusively, and an implicit but unmistakable presumption that the Guidelines, and *only* the Guidelines, prescribe a reasonable sentence, is in irreconcilable conflict with the Supreme Court's and Second Circuit's direction manifested in the series of cases discussed herein. Accordingly, the sentencing factors in § 3553(a) provide the proper guidepost for determining for Mr. Sanders a sentence "sufficient, but not greater than necessary" to achieve the objectives of sentencing.

## II. *Application of the § 3553(a) Factors to Mr. Sanders Compels a Sentence of Time Served*

Mr. Sanders is a young adult who deeply regrets his criminal conduct and the poor decisions he has made in the recent past. Despite these mistakes, which he recognizes as extremely serious, he is intelligent, he is a valued member of his community, he has a supportive family, and he is committed to choosing a different path for himself. Moreover, he has already taken steps to actualize such a path and future. As discussed below, in applying to Mr. Sanders both § 3553(a)'s mandate that a sentence be "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in" § 3553(a)(2), and the sentencing factors set forth in § 3553(a)(1)-(7), it is respectfully submitted that the purposes of sentencing have been

satisfied by Mr. Sanders' imprisonment to date.[2] In considering those prescribed sentencing factors and purposes, several aspects of Mr. Sanders's circumstances merit consideration and justify a sentence of time served.

### A. Mr. Sanders's Personal History and Background

Mr. Sanders was born on November 9, 1990, in the Bronx, N.Y. His parents are Ervin Sanders and Laverene Lovell. Mr. Sanders's father died of stomach cancer when Mr. Sanders was 5 years old, and throughout his childhood his mother worked as a home attendant to support the family. Mr. Sanders has one full sibling, Raheem Sanders, as well as two paternal half-siblings and three maternal half-siblings. He remains in close contact with his maternal siblings, as well as with his mother and other family members. Mr. Sanders has no children and has never been married (PSR ¶¶ 106-109).

When Mr. Sanders was sixteen years old, his maternal grandmother fell ill and Mr. Sanders relocated to Virginia to live with and care for her. He lived in Virginia for two years, during which time he graduated from Meadowbrook High School in 2008. After high school,

---

[2] The sentencing factors enumerated in § 3553(a) are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .];

(5) any pertinent policy statement [. . .];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Mr. Sanders returned to his mother's residence in the Bronx, where he resided until his arrest (PSR ¶ 110).

Since graduating high school and returning to New York City, Mr. Sanders has been steadily employed and has also taken steps to continue his education at the college level. He has experience working in the food service, commercial driving, retail, and construction industries. In 2012, he completed college courses in web design at the ART institute of New York City. Mr. Sanders continues to express interest in continuing his education, possibly by studying finance at the college level. Horace Taylor, a businessman and neighbor of Mr. Sanders's, wrote in his letter that "Mr. Sanders has sat down with me for hours picking my brain on marketing and promotions." (Exhibit A). Mr. Sanders's employment history and the initiative he has already shown to attain higher education and achieve his goals demonstrate how Mr. Sanders will reintegrate to society.

Mr. Sanders reported a history of smoking marijuana, beginning at the age of 13 or 14. By the time Mr. Sanders turned 18, he began smoking marijuana multiple times daily and continued doing so until the day of his arrest. (PSR ¶ 117). He is confident in his ability to abstain from substance use.

### B. Mr. Sanders's Character

Mr. Sanders, as discussed, relocated as a teenager from New York City to Virginia to care for his grandmother for a period of two years. Brenda Nixon, who wrote a letter on behalf of Mr. Sanders and has known him and his family for many years, wrote that when Mr. Sanders's "grandma fell sick he left New York to go be by her side. He assisted her in every area she asked."(Exhibit B).

Based on the other character reference letters, this instance of caretaking is representative of how Mr. Sanders relates to others. Mr. Sanders's relatives, family friends, and neighbors, similarly wrote about Mr. Sanders's helpfulness and his giving spirit, describing him as a "mentor for many children in our area." (*See* Ronda Powell's letter, Exhibit C). Neighbors shared that Mr. Sanders is a "productive person in the community with his music and helping the younger kids in the neighborhood with writing music" (*see* Evelyn Williams's letter, Exhibit D), and that, in Delores Fowler's case, Mr. Sanders, "taught my granddaughter how to ride a bike and even helped my little one to walk…If I asked him to do something, it was done with a smile and he was always here to help." (Exhibit E). His positive attitude and decency are felt by the children he mentors and by his elders. (*See* Sidney Clark, LaTanga Blair, and Zelda Sanders's letters, Exhibits F-H). Nearly all of the ten letter writers chose the word "respectful" to describe Mr. Sanders. (*See* Exhibits A through J).

The Kareem Sanders as depicted in these letters is further suggestive, in my view, that his offense conduct was an immature aberration from the person he fundamentally is. Mr. Taylor says it most succinctly when he writes of Mr. Sanders, "[h]e is not know[n] for being a bad guy, but as a good kid that is always helping people." (Exhibit A).

6

### C. Scope of Mr. Sanders's Offense Conduct

Mr. Sanders's offense conduct is serious, and he takes full responsibility for his participation in the racketeering conspiracy and in distributing marijuana. To look at the broader picture, the indictment charging Mr. Sanders also charges 56 other defendants, distributed between four different counts. The first count charges 39 of the defendants, including Mr. Sanders, and encapsulates crimes committed in furtherance of the racketeering enterprise, including murder, attempted murder, robbery, and distribution of crack, cocaine, marijuana, and oxycodone.

Mr. Sanders distributed marijuana, and was not involved in the distribution of any other narcotics, nor was he involved in any of the violent crimes listed above, nor did he have any kind of leadership role within the enterprise. Relative to the scope of the conspiracy, Mr. Sanders' involvement was limited. Moreover, those five codefendants who committed crimes similar to Mr. Sanders's and who have been sentenced to date have been sentenced to time served to be followed by a period of supervised release.[3] Therefore, I respectfully submit that a just outcome in Mr. Sanders's case, particularly when his role is contextualized within the indictment as a whole, would follow suit and result in him being sentenced to time served and a period of supervised release.

### D. The Nationwide Trend at the State and Federal Level to Reduce Prison Sentences for Non-Violent, Drug Offenders Supports that Imposing a Guideline Sentence is Unreasonable Under 18 U.S.C. § 3553(a)

The notion that drug sentences are too long and severe in the United States has been recognized by significant portions of the criminal justice community for some time. Indeed, in the face of shrinking crime, excessive costs of incarceration, dubious support for the idea that long sentences offer general deterrence,[4] and the human toll of locking up vast swaths of the population for non-violent crimes, many states began scaling back their drug sentences within the last 10 years. *See* Drew Desilver, "Feds May be Rethinking the Drug War But States Have Been Leading the Way," *Pew Research Center*, 4/2/14.

This nationwide trend finally caught up with the federal system, and the purpose and effect of federal drug sentencing has been newly scrutinized. To a degree, this new effort at scaling back draconian sentences that have landed non-violent drug offenders in federal prisons for decades is being spearheaded by the Department of Justice itself. In announcing the Department's "Smart on Crime" initiative in August 2013, Attorney General Eric Holder stated

---

[3] Shawn Walker pleaded guilty to conspiracy to commit racketeering and was sentenced to Time Served and 3 years' supervised release. Andrew Moncrieffe and Robert Munoez both pleaded guilty to conspiracy to distribute and possess with intent to distribute marijuana and were sentenced to Time Served and 3 years' supervised release. Williams Rodriguez and Vaughn Washington both pleaded guilty to conspiracy to distribute and possess with intent to distribute marijuana and were sentenced to Time Served, 4 years' supervised release, and 4 months' home confinement.

[4] The perhaps understandable notion that more severe sentences enhance public safety and offer a strong deterrent effect has generally been debunked by the scientific community. *See* Wright, Valerie "Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," *The Sentencing Project*, November 2010.

unequivocally: "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." Eric Holder Remarks to American Bar Association, August 12, 2013. Indeed, in 2014, as a first step, the Attorney General also endorsed the Federal Sentencing Commission's plan to reduce the sentencing guidelines almost across the board for all drug offenders by two points, and to make that change retroactive.

Federal judges have also been seeking reform of the draconian sentences called for by the sentencing guidelines or statutory minimums in drug cases. As Judge John Gleeson in the Eastern District of New York observed in *United States v. Diaz*:

> The increased severity of federal drug trafficking sentences is an integral part of the story of mass incarceration. In less than a decade, from 1985 to 1991, the length of federal drug trafficking sentences increased by over two-and-a-half times. Sentences for drug trafficking were 'elevated above almost every serious crime except murder.' The increase in sentence length for drug offenders 'was the single greatest contributor to growth in the federal prison population between 1998 and 2010.'

2013 WL 322243, at *10 (E.D.N.Y. Jan. 28, 2013) (internal citations omitted).

Other judges share Judge Gleeson's concern and have begun speaking out in forums beyond their judicial opinions. *See, e.g.* Judge Mark Bennett, "How Mandatory Minimums Forced Me to Send More Than 1000 Nonviolent Drug Offenders to Federal Prison", *The Nation*, 11/12/12. In short, participants in the federal criminal justice system across the spectrum have reached the conclusion that sentences for non-violent drug offenders are unreasonably severe – and do not accomplish even the punitive goals of sentencing such as deterrence or just punishment.

Long-term incarceration has a devastating effect on defendants and their families. People are separated from their children and loved ones, and slowly grow old behind bars. Therefore, I respectfully urge the Court to recognize the recent trend and to determine the 8 months of imprisonment Mr. Sanders has served is sufficient and not greater than necessary to satisfy the aims of sentencing enumerated at 18 U.S.C. § 3553(a).

### E.  Sentencing Mr. Sanders to a Guideline Sentence Would Be "Greater than Necessary" to Achieve the Purpose of Deterrence

The deterrent purpose of sentencing is not served or achieved by imposing long sentences on defendants, such as Mr. Sanders, who have not previously served jail time. Accordingly, sentencing Mr. Sanders to an additional term of incarceration would be much "greater than necessary" to achieve the purposes of sentencing set forth under 18 U.S.C. § 3553(a)(2).

As the Second Circuit stated in *United States v. Mishoe*, in the context of discussing the Career Offender Guideline:

> a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses. If, for example, a defendant twice served five or six years and thereafter committed another serious offense, a current sentence might not have an adequate deterrent effect unless it was substantial, perhaps fifteen or twenty years. Conversely, if a defendant served no time or only a few months for the prior offenses, a sentence of even three or five years for the current offense might be expected to have the requisite deterrent effect.

241 F.3d 214, 220 (2d Cir. 2001).

Applying this rationale to Mr. Sanders, he has never served any substantial term of incarceration and has no criminal history (PSR ¶ 99-104). The eight months of incarceration Mr. Sanders has already served are more than sufficient in having the requisite deterrent effect.

## Conclusion

Accordingly, for all the reasons set forth above, it is respectfully requested that the Court sentence Mr. Sanders to time served, to be followed by a period of supervised release. Thank you for the Court's consideration of this sentencing memorandum.

Respectfully submitted,

/s/

Aaron Mysliwiec
*Attorney for Kareem Sanders*

cc:   Rachel Maimin
      Assistant United States Attorney
      (By Electronic Mail)