UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:16-cr-00212-19 (LAK) |
| vs. | |
| DAQUAN ANDERSON, *et al*. | |
| Defendants. | |

# SENTENCING SUBMISSION ON BEHALF OF DAQUAN ANDERSON

Eric R. Breslin, Esq.
Melissa S. Geller, Esq.
**Duane Morris LLP**
*A Delaware Limited Liability Partnership*
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey  07102
Tel: 973.424.2000
Fax: 973.424.2001
erbreslin@duanemorris.com

*Attorneys for Defendant Daquan Anderson*

Daquan Anderson has not lead an easy life.  In truth, he never had a chance.  His mother, suffering from mental illness, gave him up at birth.  His adopted mother, either unable or unwilling to cope with Mr. Anderson's mental illness, repeatedly had him institutionalized until she kicked him out at the age of sixteen with nothing but the clothes on his back and a lingering and well-earned horror of in-patient treatment facilities.  At sixteen, Mr. Anderson subsisted by sleeping on friends' couches when he could.  At other times, he slept wherever he could find a space.  Given his mother's history of mental illness and his own traumatic childhood, it can be no surprise that Mr. Anderson suffers from a range of serious mental illnesses, including chronic depression and possible bi-polar disorder.  Nor is it surprising that he never had access to any reliable kind of treatment to help manage these disorders. His present straits and his status as a defendant before Your Honor cannot be said to be much of a surprise either.

Mr. Anderson, in the absence of real mental health treatment, relied on marijuana to self-medicate, rather than return to the cycle of institutional care and psychotropic drugs with the possibility of horrendous side-effects.  His fear of mind altering drugs has also kept him away from any drug more serious than marijuana.

With no help, no support, and no guidance as to how to obtain any gainful employment, if such employment was even available to him in the desperately poor neighborhood where he grew up, Mr. Anderson turned to selling marijuana.  Everyone he knew was in a gang.  Everyone he associated with was in a gang.  It seemed to him that virtually every young man of his neighborhood was in a gang and that there was not much available in the way of alternative options.  Notwithstanding the gang culture that is a way of life for young men like Mr. Anderson, he stayed on the fringes, avoiding gang violence or any drug other than marijuana.  He was a part of the conspiracy charged.  But he was a bit player, who committed no acts of violence and

exercised no management over or control of the actions of others.  He realized a pittance from his criminal conduct, only enough to keep himself fed and alive at a depressingly basic level.

We request compassion and understanding for Mr. Anderson, who has been shown so little of either in his life.  He has dreams of getting his GED and becoming a sanitation worker.  He has dreams of building a real life for himself, with a legitimate job, a home, and maybe someday a family.  We have faith that this is something Mr. Anderson can achieve.

We have been working with various groups to obtain for him the support he will need upon his release.  Not just housing and job training, but assistance in finding real work, in obtaining his GED, and in getting him the mental health treatment he deserves.  My law firm, Duane Morris, will be keeping him as a client on a pro bono basis to support his re-entry into society. We believe in Mr. Anderson and will continue to stand by him.

Finally, we note that the Guidelines calculation in Mr. Anderson's final PSR overstates his criminal history, although we also note that Probation also recommends a below Guidelines sentence.  Nevertheless, given that Mr. Anderson has already served over a year and a half in jail, and, given his history and characteristics, we submit that a time-served sentence is appropriate in this case.

I.     **Mr. Anderson's Plea Agreement and Guidelines Range.**

    A.    <u>The plea agreement.</u>

On November 28, 2016, Mr. Anderson pleaded guilty to one count of engaging in a RICO conspiracy beginning from 2007.  As indicated in the plea agreement, Mr. Anderson's role in the offense ended on December 31, 2015.  Plea Agreement, p. 2.  The plea agreement entered

into by the government and Mr. Anderson calls for an offense level of 19, and a criminal history of III[1], resulting in a guidelines range of 37-46 months.

      B.      <u>Time served by Mr. Anderson to date.</u>

On February 29, 2016, Mr. Anderson was incarcerated at Rikers Island to serve a six-month sentence (three served, three suspended) following a plea agreement in the New York Supreme Court. Mr. Anderson has since appealed that conviction. His argument was heard in Appellate Division in May 2017. Mr. Anderson had served two months of his three months' sentence when he was transferred to federal custody on this matter on or about April 27, 2016. Mr. Anderson has been in federal custody since that date. As of June 27, Mr. Anderson has been in federal custody for exactly fourteen months. If the time he served on Rikers Island is factored in, Mr. Anderson has served approximately sixteen months. Given that Mr. Anderson's time served in New York State was contiguous to his incarceration in the federal system, we respectfully request that Mr. Anderson's two months on Rikers Island be factored into the sentence imposed by the Court.

      C.      <u>The PSR and Probation's recommendations.</u>

Probation has access to sealed juvenile records that the United States Attorney and defense counsel do not. As a result, probation uncovered a "youthful offender," adjudication of which the government and defense counsel were unaware. As a result, probation places Mr. Anderson's criminal history category at IV, resulting in a guidelines range of 46 – 57 months. Probation recommends a below guidelines sentence of 30 months.

---

[1] As is standard in a plea agreement in this district, the Plea Agreement expressly provides for the potential that the criminal history category may change following the research and drafting of the PSR.

3

D. The PSR overstates the criminal history.

The placement of Mr. Anderson in criminal history category IV overstates his criminal history. Probation assigned criminal history points as follows:

| Robbery 2d Degree | Adjudicated a Youthful Offender 1 year | 2 points |
|---|---|---|
| Actual sentence served approximately 8 months according to Mr. Anderson. | | |

| Attempted Criminal Contempt, 2d Degree | Sentenced January 17, 2013 | 1 point |
|---|---|---|
| Sentenced to 30 days' imprisonment | | |

| Robbery, 3d Degree | Plea, February 29, 2016 | 2 points |
|---|---|---|
| Sentenced to 3 months' imprisonment, 3 months suspended, of which two months were served on Rikers Island. | | |
| Mr. Anderson appealed this conviction, but was denied. | | |

| Attempted Assault, 3d Degree | Plea, February 29, 2016 | 1 point |
|---|---|---|
| Sentenced to 30 days' imprisonment, served concurrently on Rikers Island with the above-listed offense. | | |
| Mr. Anderson appealed this conviction, but was denied. | | |

The addition of two points for the first listed offense, the youthful offender offense, derives from a sealed entry on Mr. Anderson's criminal history report, made available to Probation, but unavailable and unknown to the government or the defense at the time of the plea agreement. The inclusion of these two points appears based solely on the criminal history report, and is not supported by any judgment of conviction, arrest record, pre-sentence report, or record of time served. The inclusion of this offense in the criminal history category is error because,

"youthful offender" adjudications are specifically classified as non-criminal offenses, with an automatically sealed record that is the equivalent of an expungement.

A juvenile offender in New York is defined as someone acting under the age of 16. N.Y. CPL § 720.10. The "youthful offender" law affords some of the protections of the juvenile system to those committing offenses between the ages of 16 and 18. *Id*. § 720.10, *et seq*. It exists for the express purpose of, among other things, "relieving the eligible youth from the onus of a criminal record." *Id.*, § 720.20(a). When a person has been adjudicated a "youthful offender," his or her criminal conviction is vacated and replaced by a youthful offender finding. The individual is then sentenced under the "youthful offender provisions of the New York Penal law. *Id.*, § 720.20(3). According to New York law, "[a] youthful offender adjudication is not a judgment of a conviction for a crime *or any other offense*. . ." *Id.*, § 720.35 (emphasis added). Youthful offender records are automatically sealed. N.Y. CPL § 720.15.

As a youthful offender adjudication is not a judgment of conviction for any crime or offense under New York law, it cannot be assigned criminal history points under the Sentencing Guidelines. *See* U.S.S.G., Commentary to § 4A1.1(a), Note 1 (discussing points added to terms of imprisonment with regard to "offenses" committed). Additionally, as the records are sealed with the express purpose of preventing them from being used against a youthful offender in future proceedings, they should be treated as expunged under the law. *But see United States v. Matthews*, 205 F.3d 544 (2d Cir. 2000) (holding that sealed records are not the equivalent of expunged records and permitting the inclusion of a youthful offender adjudication in the criminal history calculation).

Because the youthful offender adjudication cannot properly be counted in Mr. Anderson's criminal history, he should be held responsible only for 6 criminal history points, placing him in Category III, resulting in a Guidelines range of 37-46 months.

## II.   The 3553(a) Factors Counsel Leniency[2]

In its sentencing recommendation, Probation counsels leniency, recommending 30 months imprisonment, based in no small part on the terrible life Mr. Anderson has lived to date, and his numerous psychiatric issues.[3]  We submit that the fourteen months already served by Mr. Anderson, plus the three he spent at Rikers Island immediately before, satisfy the goals of punishment and that time served is the most appropriate disposition in this case.

### A.   The nature and circumstances of the offense merit leniency.

As Probation noted, Mr. Anderson's involvement in this case is confined to the sale of marijuana.  He had no involvement in any gang-related violence.  Nor did he turn to the sale of more dangerous, and more lucrative, types of drugs, such as cocaine and heroin, despite the fact that many of his friends and fellow gang members did precisely that.

### B.   Mr. Anderson's history and characteristics merit leniency.

Mr. Anderson grew up with no parental support.  Rather than deal with the psychiatric issues afflicting her adopted son, his adopted mother simply institutionalized him.  When he was not institutionalized, he was medicated with a variety of psychotropic drugs, that were likely ill-used and indifferently administered.  Without a support system, and given the severe side effects

---

[2] The 3553(a) factors for consideration at sentencing are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the calculated guidelines range; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution.  18 U.S.C. § 3553(a).

[3] Out of respect for Mr. Anderson's privacy, we do not attach Mr. Anderson's psychiatric history to this public filing.  We note that his psychiatric history, incorporating documents provided by the defense, is set forth at length in the PSR at pages 30-32.

of many of these drugs, Mr. Anderson's decision to self-medicate with marijuana is not all that hard to understand.

Homeless at 16, with no money, and only the ghost of an education, Mr. Anderson had to fend for himself, all while dodging and seeking protection from the gangs that populated his neighborhood.  Getting a job seemed an insurmountable obstacle, given his history and mental health issues.  But this neighborhood in which he grew up had its own social safety net for boys like him.  There was a gang, including in its number boys he had grown up with his entire life.  And they lived a lifestyle that provided for them, and gave them an income.  Nevertheless, Mr. Anderson never fully integrated into the gang.  He disliked the harder drugs, and the guns, and the weapons.  At best, he remained on the periphery, selling marijuana to provide himself some modest support.

Through this adversity, Mr. Anderson built himself a support network.  It was small, for he does not trust easily.  They are not wealthy, or powerful, or connected.  But they love him and their fierce loyalty speaks more for Mr. Anderson than anything else can.  Not all have been able to send letters, but some have.

The first letter is from Ms. Diane Jones and her family (Exhibit "A").  They are the closest thing to a real family Mr. Anderson has ever known.  She has been personally involved in his defense, making sure that we, as his attorneys, have all the information we need to help Mr. Anderson.  She speaks of his kindness, of his dedication to family, and of his potential.  It is potential we have seen from someone who, despite unimaginable challenges, retains an admirable sense of self.

The second letter is from Karen Zhou, who knows Mr. Anderson from her work in the community (Exhibit "B").  She speaks of someone with a fierce dedication to his community.

Someone who, although nothing has ever been given to him, always thinks of others before he thinks of himself.  She speaks of someone who actively wishes to improve himself and those around him.

For those of us at Duane Morris who have worked with Mr. Anderson, we have seen the same.  His plans for the future include finishing his GED, so he can have an education.  He would like a job in sanitation, because he likes the idea of keeping things clean and because he feels there is a chance to do well for himself in that field.  Like so many of those Mr. Anderson opens to, we are attached to him.  We will continue to represent him at the close of this case and to lend what support we can to facilitate his rehabilitation and re-entry into society.

      C.      <u>Mr. Anderson's re-entry plan.</u>

There can be little benefit to returning Mr. Anderson to the street with even less than what he started with in February 2016.  Community ties and connections with friends, other than those closest to him, that may have helped get him on his feet fade with each month he spends incarcerated.  To that end we have been working to locate assistance for Mr. Anderson and have been in contact with the Fortune Society, located in the Bronx, New York.  The Fortune Society has agreed to assist Mr. Anderson with education, job placement, any substance abuse and mental health treatment he may need, and may be able to provide him a place to live upon his release.  A letter from the Fortune Society describing their available services is attached here at Exhibit "C."

In addition, Mr. Anderson continues to have the support of Ms. Jones and her family, who will do everything in their power to ensure that Mr. Anderson comes home to the structure and support he needs to build himself a real life.

Mr. Anderson understands that any sentence imposed may require him to get help for his substance abuse and his mental illness.  Should the Court issue a sentence of incarceration, we

respectfully request that it recommend that he be enrolled in the RDAP program, to receive the kind of drug treatment that he needs. Mr. Anderson also requests a recommendation that he serve his time at Danbury, should the Court order incarceration, as that is the most convenient federal prison for Ms. Jones and her family – Mr. Anderson's adopted family – to visit Mr. Anderson.

D.   <u>A below Guidelines sentence is more than is necessary to accomplish justice.</u>

A central goal of sentencing is general and specific deterrence. A guidelines sentence here does not accomplish either of these aims.

Research shows that the fact of a criminal sanction acts as a deterrent, but the severity of the sentence does not. *See, e.g.*, Valerie Wright, Ph.D., "Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment," The Sentencing Project (Nov. 2010) (attached as Exhibit "D"); Nat'l Research Council, *The Growth of Incarceration in the United States: Exploring Causes and Consequences*, Nat'l Academies Press (2014), pp. 131, 135-136 (relevant section attached as Ex. "E"). The longer the prison sentence, however, the greater the recidivism rate, as shorter sentences allow incarcerated individuals to maintain times with non-incarcerated support networks. *See* Deterrence in Criminal Justice, at pp. 6-8.

This is particularly true for Mr. Anderson. His incarceration has taken him out of his environment and forced a change in his thinking and his life. But the longer he is incarcerated, the more the opportunity for rehabilitation slips by. This is evident by the handful of disciplinary actions taken against Mr. Anderson while he has been incarcerated. None of them were for violence, but the strain of lengthy incarceration, particularly given his untreated mental illness, is clearly visible.

Specific deterrence, in this case, is best served by therapy and treatment, along with education, then by lengthy incarceration. *See United States v. Beaufort*, No. 13-cr-125 (JBW),

9

2014 WL 1278090, *3 (E.D.N.Y. Mar. 27, 2014) (imposing a below-guidelines sentencing and noting that treatment for drug and alcohol abuse is more likely than additional incarceration to prevent recidivism where drug abuse played a significant factor in the crime).  A shorter sentence also achieves the aim of general deterrence.  As the research shows, a lengthy sentence has no more deterrent effect than a shorter sentence. Mr. Anderson has already served over a year and a half.  Probation recommends 30 months.  We request time served.

## CONCLUSION

In an exhaustive opinion, Judge Jack B. Weinstein, Eastern District of New York, examined the root cause of criminality in, as he termed it, the "permanent underclass."  *See United States v. Bannister*, 786 F. Supp. 2d 617 (E.D.N.Y. 2011).  As he noted, abuse, poverty, lack of education, a neighborhood rife with crime, and no family support combine to provide "almost no opportunity to achieve economic stability, let alone the American dream of upward mobility."  *Id.* at 689.  This may have been written about Mr. Anderson.

Mr. Anderson had little chance as child and a teenager to develop anything that close to a normal life.  But he sees now where that has led him.  He wants his GED.  He wants a fulfilling life.  We ask the Court to give him the chance.  We request a sentence of time served.

Dated: Newark, New Jersey
       June 27, 2017

                         */s/ Eric R. Breslin*
                         Eric R. Breslin
                         Melissa S. Geller
                         **DUANE MORRIS LLP**
                         One Riverfront Plaza
                         1037 Raymond Blvd., Suite 1800
                         Newark, New Jersey 07102
                         Telephone: 973.424.2000
                         Facsimile: 973.424.2001
                         *Attorneys for Defendant Daquan Anderson*