

1095 Avenue of the Americas
New York, NY  10036-6797
+1  212  698  3500  Main
+1  212  698  3599  Fax
www.dechert.com

**MICHAEL J. GILBERT**

michael.gilbert@dechert.com
+1 212 698 3886  Direct
+1 212 698 0426  Fax

June 30, 2017

**VIA ECF AND HAND DELIVERY**

The Honorable Lewis A. Kaplan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *United States v. Parrish, et al.* (David Prince Mattison), 16 CR 212 013 (LAK)

Dear Judge Kaplan:

We represent David Mattison, a defendant in the above-captioned case, who is scheduled to be sentenced on July 19, 2017.  We respectfully submit this letter to assist the Court in determining a sentence that is "sufficient but not greater than necessary," according to the sentencing factors set forth in 18 U.S.C. § 3553(a). While the Presentence Investigation Report ("PSR") recommends a below-Guidelines sentence of 36 months, for the reasons described below, we respectfully request the Court impose a sentence of 24 months.  *See* PSR at 32 (Sentencing Recommendation).

Mr. Mattison is a 25 year old first-time offender, who was a high school honor roll student and has a long history of legitimate employment.  He was arrested on April 27, 2016, and has been detained since that date.  He entered a plea of guilty on March 6, 2017, to Count One of the Superseding Indictment: Racketeering Conspiracy, 18 U.S.C. § 1962(d), pursuant to a Plea Agreement. Ex. A.  A sentence of 24 months would be sufficient but not greater than necessary to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a) because, as described below and in the PSR, (i) such a sentence would avoid unwarranted sentencing disparities in light of sentences this Court has imposed on Mr. Mattison's co-defendants, (ii) Mr. Mattison played a small role in the overall conspiracy, and (iii) a longer prison sentence would do more harm than good by preventing Mr. Mattison from providing for his young children.  *See* PSR ¶ 134, Sentencing Recommendation at 31-32 ("[B]ased upon the defendant's upbringing, lack of criminal history, ability to be employed in the future, and the need to avoid unwarranted sentencing disparity with the co-defendants, a sentence slightly below the Advisory Guidelines range appears warranted.").



Mr. Mattison wrote a letter to Your Honor, which we have included as Exhibit B to this letter, in which he describes his background, goals upon release, and expresses his regret for his actions.

## I.    Mr. Mattison's Personal, Family and Employment History

Mr. Mattison was born on August 29, 1991, in the Bronx, New York, to Rowan Mattison and Maureen Mattison.  PSR ¶ 76.  Mr. Mattison was one of six children from his parents' marriage, however, one of Mr. Mattison's sisters tragically passed away in a car accident in 2004, at the age of 16.  PSR ¶ 77.  The letters submitted by Mr. Mattison's family members describe how difficult it was for Mr. Mattison to lose his older sister and how he was especially affected by her loss.  Ex. C.  Despite this hardship so young in life, his sister still calls Mr. Mattison "the life of the family."  *Id.*

Mr. Mattison's parents separated when he was a young child and legally divorced when he was a teenager.  PSR ¶ 78.  After his father moved out, Mr. Mattison lived with his mother and siblings for the majority of his life in the Eastchester Garden apartments in the Bronx.  PSR ¶ 82.  He describes his experience there as "regular project life," where violence and narcotics were commonplace.  PSR ¶ 81.  Despite his surroundings, Mr. Mattison was a bright, well-meaning young student, who was raised under the strict moral guidelines of the Jehovah Witness religion. PSR ¶ 81, 83; Ex. C.  His sister describes that religious beliefs were deeply important in their household and for the majority of his life, Mr. Mattison lived according to his mother's values and rules.  Ex. C.  Though Eastchester Gardens could be a difficult environment, Mr. Mattison had a reputation as a peacekeeper and a responsible young adult, as described by Curtis Perkins, a security guard in Eastchester Gardens, and Keith Ramsey, a member of the Eastchester Resident Council.  Exs. D, H.

Mr. Mattison's and his siblings' basic needs were usually met, however, there were times that the water and the heat in the building where shut off.  PSR ¶ 79.  Mr. Mattison believes his mother struggled with alcoholism and he remembers instances when she would lock herself in her room for long periods of time, leaving the children to fend for themselves.  PSR ¶ 80.

Mr. Mattison also lived with his father for a brief period of time when he was in middle school and high school.  PSR ¶ 81.  Though his father worked throughout Mr. Mattison's life and was able to provide for Mr. Mattison at times, PSR ¶ 79, Mr. Mattison describes struggling to fit in with his peers in his father's Harlem neighborhood, which led him to move back in with his mother.  *Id.*



The Honorable Lewis A. Kaplan
June 30, 2017
Page 3

Mr. Mattison's mother and sister, Tashika, also describe him as a smart student, although he struggled with Attention Deficit Disorder ("ADD"). PSR ¶ 83; Ex. C. Mr. Mattison was diagnosed with ADD when he was in first or second grade and though he was briefly prescribed Ritalin, his father requested he be taken off the medication. PSR ¶ 89. Despite his learning difficulties, Mr. Mattison maintained good grades and was placed on the Walton High School honor roll. PSR ¶ 99. His sister notes that he was particularly good at math and often tutored his siblings or helped them with their homework. Ex. C. While in custody, Mr. Mattison has endeavored to continue his education by completing a health education program, an art class, a card making class, and a resume writing class. Ex. I; PSR ¶ PSR 102.

Mr. Mattison has three young children of his own: Jaden King, age five; Dakota Mattison; age one; and Dallas Mattison, age one. PSR ¶ 84-86. Mr. Mattison maintains good relations with Jaden and Dakota's mothers, and sees both children often. PSR ¶ 84-85. He is able to see Dallas more occasionally. *Id.* Mr. Mattison supports his children, paid child support when he was not in prison, and is described by his own mother as a good father. PSR ¶ 83-84. Victoya Mcdermott, Dakota's mother, and Raeann Stanberry, Jaden's mother, wrote letters describing how important Mr. Mattison is to their children and how big a role he has tried to play in raising them. Ex. F. Ms. Stanberry says Mr. Mattison's arrest has been particular hard for Jaden, who used to see Mr. Mattison every weekend. *Id.*

As described in PSR ¶¶ 103-112, Mr. Mattison has a long employment history. He began working in September 2010, at 19 years old, at a McDonald's in the Bronx, making minimum wage. PSR ¶ 111. He continued to hold various jobs over the following years, and during periods of unemployment, earned money as a day laborer. PSR ¶¶ 109-112. In 2013, he applied for and obtained a license to be a security guard. PSR ¶ 101. Thereafter, in 2014 and 2015, he worked at several different security companies. PSR ¶¶ 104-105, 108.

## II.     The Instant Offense

### A.     Offense Conduct

Mr. Mattison was arrested on April 27, 2016, in connection with the Government's large-scale investigation into the 2Fly gang. PSR ¶ 29. Mr. Mattison met members of the 2Fly gang in Eastchester Gardens, where Mr. Mattison lived with his mother and siblings. PSR ¶¶ 14, 82. While members of the 2Fly organization are accused of committing various crimes, Mr. Mattison was responsible for i) a June 5, 2016, assault, in which Mr. Mattison accompanied an armed member of 2Fly to confront a third party, who was not



injured during the interaction, and ii) distributing between 40 and 60 kilograms of marijuana.  *See* PSR ¶¶ 25-28.

> **B.**     **Plea**

Mr. Mattison entered a plea of guilty on March 6, 2017, to Count One of the Superseding Indictment: participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), a charge that carries no mandatory minimum sentence.  NYSCEF No. 934; PSR ¶ 49.  Mr. Mattison entered into a Plea Agreement with the Government in which he accepted responsibility for distributing between 40 and 60 kilograms of marijuana and for participating in the June 5, 2016, assault.  Ex. A at 2-3.  While the assault is considered an "Assault with Intent to Commit Murder" under Guidelines § 2A2.1, as mentioned above, Mr. Mattison was only accused of and took responsibility for accompanying a member of 2Fly during the assault in which a firearm was discharged, but was not himself carrying a weapon.  PSR ¶ 26.

**III.    The Appropriate Sentence**

> **A.     Guidelines Calculation**

The PSR and Plea Agreement calculate a Guidelines Range of 57-71 months.  PSR ¶ 118, Ex. A at 4.  Under the 2016 Guidelines Manual, § 2D1.1(a)(5) and 2D1.1(c)(11), the base offense level for distribution of marijuana is 20 because the offense involved at least 40 kilograms but less than 60 kilograms of marijuana, and a firearm was possessed.  PSR ¶¶ 50-55; Ex. A at 2-3.  Under § 2A2.1(a)(2), the base offense level for participating in the June 5, 2016, assault is 27.  PSR ¶ 56; Ex. A at 3.  Pursuant to the Multiple Count Analysis required by § 3D1.4, Mr. Mattison's total offense level is 28.  PSR ¶ 65; Ex. A at 3.  Since Mr. Mattison accepted responsibility in a timely manner, he is entitled to a 3-point reduction in offense level, resulting in an offense level of 25.  PSR ¶¶ 67-69; Ex. A at 3.

Since this is Mr. Mattison's first offense, he has zero Criminal History points and is in Criminal History Category I.  PSR ¶¶ 70-71; Ex. A at 3-4.  An offense level of 25 and a Criminal History Category of I results in a sentencing range of 57-71 months.  PSR ¶ 118, Ex. A at 4.

> **B.     A Non-Guidelines Sentence of 24 Months is Appropriate**

We respectfully ask the Court to impose a non-Guidelines sentence of 24 months. See *Pepper v. United States,* 562 U.S. 476, 491 (2011) (it is the Court's responsibility to



"'impose a sentence sufficient, but not greater than necessary' to serve the purposes of sentencing" (quoting 18 U.S.C. § 3553(a))).  In addition to calculating the proper Guidelines sentence, a sentencing court should consider the 18 U.S.C. § 3553(a) factors to determine whether a non-Guidelines sentence is warranted.  *Gall v. United States*, 552 U.S. 38, 50 (2007).  District Court judges "have an obligation to consider whether to depart from the Guidelines sentencing range or to impose a non-Guidelines sentence in every case." *United States v. Corsey,* 723 F.3d 366, 382 (2d Cir. 2013); *Oldyn v. United States*, No. 10 CR. 94 JSR AJP, 2014 WL 3417465, at *3 (S.D.N.Y. July 8, 2014) (Judge Rakoff imposed a non-Guidelines sentence, stating the range meant "very little if anything in the calculation of the sentence itself," given his consideration of the § 3553(a) factors.).

This Court has "considerable discretion in identifying the grounds that can justify a non-Guidelines sentence." *United States v. Jones*, 531 F.3d 163, 172 (2d Cir. 2008).  "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate… the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)).

### 1.     Need to Avoid an Unwarranted Sentencing Disparities

Section 3553(a)(6) specifically directs the Court to address the need to avoid unwarranted sentencing disparities among defendants with similar records, who have been found guilty of similar conduct.  *See* 18 U.S.C. § 3553(a)(2); *United States v. Calcano*, No. S17 98 CR. 438 PGG, 2014 WL 148637, at *9 (S.D.N.Y. Jan. 15, 2014) ("Here, the need to avoid unwarranted sentencing disparities counsels in favor of a non-Guidelines sentence.").  This Court has already sentenced many of Mr. Mattison's co-defendants.  *See* PSR ¶ 11 (Status Chart of Co-Defendants).  Given the role Mr. Mattison played in comparison to co-defendants who were guilty of similar conduct, a sentence of 24 months would be fair and just.

The Status Chart in the PSR reflects the status of co-defendants in this case as of April 28, 2017.  PSR ¶ 11.  To aid the Court, below is a chart of a selection of co-defendants who were sentenced for conduct similar to Mr. Mattison's, as of the date of this letter.

| Defendant | Plead to Count | Sentencing Date | Offense Level | Criminal History Category | Sentence | Relevant Background/ Predicate Acts |
|---|---|---|---|---|---|---|
| **Damon Parrish** | 2 | 11/15/2016 | 21 | I | 24 months, 3 years | - Wholesale distribution of |



The Honorable Lewis A. Kaplan
June 30, 2017
Page 6

| Defendant | Plead to Count | Sentencing Date | Offense Level | Criminal History Category | Sentence | Relevant Background/ Predicate Acts |
|---|---|---|---|---|---|---|
| | | | | | supervised release | marijuana to 2Fly leaders<br>- Possession of an firearm |
| Brandon Anderson | 2 | 11/15/2016 | 27 | III | 45 months, 3 years supervised release | - 280-840 grams of crack cocaine<br>- Without plea, would have been subject to mandatory minimum of 10 years |
| Marcel Bent | 1 | 12/20/2016 | 17 | I | 24 months, 3 years supervised release | - One of the gang's primary marijuana suppliers<br>- Arrested with loaded .22 caliber firearm and 8 inch blade |
| Bruce Washington | 2 | 3/01/2017 | 27 | I | 60 months, 3 years supervised release | - 196-280 grams of crack cocaine<br>- Possession of a firearm |
| Erick Canales | 2 | 11/15/2016 | 12 | IV | 21 months, 3 years supervised release | - December 2, 2010 Second degree Assault<br>- March 4, 2014 Assault with a weapon |
| Melvin Rodriguez | 2 | 4/24/2017 | 17 | II or III (not resolved) | 24 months, 3 years supervised release | - 300-400 grams of cocaine |
| Shawn Walker | 1 | 12/20/2016 | (unknown) | I | Time served | - 40-60 kilograms of marijuana |
| Kareem Sanders | 1 | 3/01/2017 | 16 | I | Time served (8 months) | - 40-60 kilograms of marijuana |



The Honorable Lewis A. Kaplan
June 30, 2017
Page 7

| Defendant | Plead to Count | Sentencing Date | Offense Level | Criminal History Category | Sentence | Relevant Background/ Predicate Acts |
|---|---|---|---|---|---|---|
| **Andrew Moncrieffe** | 2 | 12/20/2016 | 17 | I | Time served | - 60-80 kilograms of marijuana |
| **Williams Rodriguez** | 2 | 2/01/2017 | 17 | I | Time served | - 60-80 kilograms of marijuana |
| **Vaughn Washington** | 2 | 2/01/2017 | (unknown) | I | Time served (7 months) | - Fugitive for 8 weeks - Possessed marijuana upon entering MDC |

As the chart reflects, co-defendants who were responsible for similar quantities of marijuana, with no additional conduct, were sentenced to time served.  *E.g.* Shawn Walker, Kareem Sanders, Andrew Moncrieffe, Williams Rodriguez, Vaughn Washington. Had Mr. Mattison only been responsible for distribution of marijuana, with no criminal history, it is likely he would also have been sentenced to time served.

However, Mr. Mattison understands that he also accepted responsibility for an assault charge and an incremental punishment must be given for his participation. As shown above, Erick Canales was responsible for two violent acts and received a sentence of 21 months imprisonment.  Co-defendants such as Damon Parrish and Marcel Bent were responsible for distribution of marijuana and possession of a firearm, and received sentences of 24 months imprisonment.  Mr. Mattison falls much closer to these co-defendants then, for example, Brandon Anderson and Bruce Washington, who were responsible for distributing very large quantities of crack cocaine (and Washington possessed a firearm), and received sentences of 45 months and 60 months imprisonment, respectively.  Therefore, a sentence of 24 months would be commensurate with the sentences of Mr. Mattison's co-defendants who were guilty of similar conduct, and would avoid unwarranted sentencing disparities.

### 2.      Mr. Mattison's Role In The Enterprise Was Relatively Minor

As noted previously, Mr. Mattison played a small role in the overall 2Fly enterprise.  He was primarily a street-level dealer who sold marijuana to people within his neighborhood.  *See* PSR ¶¶ 27-28.  Whereas other co-defendants supplied members of the



enterprise with drugs and enforced their activities with violence, Mr. Mattison did not. Though he accompanied another member of 2Fly to confront a third party, the third party was uninjured, and Mr. Mattison did not personally commit any acts of violence. PSR ¶ 26.

Mr. Mattison did not design or direct this enterprise. He did not issue orders, enforce orders, or direct others to take any kind of action. He was by no means the kingpin in this organization, nor even high up in the authority ladder of the organization. He had no ownership interest in the drugs sold by this enterprise, did not obtain significant assets from his activity and stands before the Court with no assets. *See* PSR ¶¶ 113-16. Mr. Mattison takes full responsibility for his actions and does not intend to excuse his conduct, but rather, to ask the Court to impose a sentence consistent with his role.

### 3.        Mr. Mattison's Children Need His Support

As discussed in the PSR, Mr. Mattison's employment history and relationship with his children militate against a harsh sentence. *See* 18 U.S.C. § 3553(a)(1); PSR at 31-32. Section 3553(a) makes it clear that the court should consider the "history and characteristics of the defendant," and the Second Circuit has held that, in addition to the obligation to consider all of the sentencing factors outlined in Section 3553(a), the judge may also consider his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Sappleton,* 365 F. App'x 249, 251 (2d Cir. 2010) (citing *United States v. Jones,* 460 F.3d 191, 195 (2d Cir. 2006)); 18 U.S.C. § 3553(a)(1). Mr. Mattison's children and their dependence on his ability to work should be considered in fashioning a fair and just sentence. The PSR notes that "all accounts indicate that he is a good father who cares for his children." PSR at 31. The letters submitted by Mr. Mattison's family members, including the mothers of his children, reflect the love and responsibility he has taken for his children. Exs. C, F. The sooner Mr. Mattison is released and able to find employment, the better he can continue to care for his children and provide them with monetary support.

Mr. Mattison's employment history indicates his willingness to go out and seek employment in order to support himself and his children. *See* PSR ¶¶ 103-112. Though he has not held any single job for long, he has worked in some capacity since he was 19 years old. *Id.* While he intended to apply to college, his father's income rendered him ineligible for financial aid, and he was discouraged from applying. PSR ¶ 100. In 2013, he applied for and obtained a license to be a security guard, which shows his dedication to finding new opportunities and steady employment. PSR ¶ 101. The PSR specifically



The Honorable Lewis A. Kaplan
June 30, 2017
Page 9

mentions that his "ability to be employed in the future" is one of the reasons Probation recommends a below-Guidelines sentence.  PSR at 32.

The Court can and should consider the effect a longer prison sentence will have on Mr. Mattison's children, who depend on his financial support, and with whom he has a strong and positive relationship.

**IV.      Conclusion**

Mr. Mattison accepts responsibility for his actions.  For the reasons set forth above, we submit that a non-Guidelines sentence of 24 months would be a fair and just sentence under 18 U.S.C. § 3553(a).  We also ask the Court to recommend Mr. Mattison be designated to serve his sentence at a facility as close as possible to New York City, so that his children may continue to visit him.


Respectfully Submitted,



/s/ Michael J. Gilbert_____
Michael J. Gilbert
Amanda Tuminelli
*Counsel for David Mattison*
Dechert LLP


cc:      Assistant United States Attorney Rachel Maiman

Attachments

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 6, 2017

**BY EMAIL**

Michael J. Gilbert, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036

Re: **United States v. David Mattison, S1 16 Cr. 212 (LAK)**

Dear Mr. Gilbert:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from David Mattison (the "defendant") to Count One of the above-referenced Superseding Indictment (the "Indictment").

Count One of the Indictment charges the defendant with participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d), from at least in or about 2007, up to and including in or about 2016, and carries a maximum term of imprisonment of 20 years, a maximum term of supervised release of 3 years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution as specified below.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement), for participating in a racketeering conspiracy, from at least in or about 2007, up to and including in or about 2016, as charged in Count One of the Indictment, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

Rev. 07.20.2016

The defendant hereby admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, (i) any interest the defendant acquired or maintained as a result of the commission of the offense alleged in Count One of the Indictment; (ii) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant has established, operated, controlled, conducted, or participated in the conduct of, in committing the offense alleged in Count One of the Indictment; and (iii) any property, constituting or derived from, any proceeds which the defendant obtained, directly and indirectly, from the racketeering activity alleged in Count One of the Indictment. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

The defendant further agrees to make restitution in an amount ordered by the Court in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code, and that the obligation to make such restitution shall be made a condition of probation, *see* 18 USC § 3563(b)(2), or of supervised release, *see* 18 USC § 3583(d), as the case may be.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The November 1, 2016 Guidelines apply to this offense.

2. The Guideline applicable to the offense charged in Count One of the Indictment is U.S.S.G. § 2E1.1. Pursuant to U.S.S.G. §§ 2E1.1(a)(1) and (2), the base offense level is the greater of 19 and the offense level applicable to the underlying racketeering activity, each after application of Chapter Three, Parts A, B, C, and D of the Guidelines.

3. Pursuant to U.S.S.G. § 2D1.1, comment. (n.1), because there is more than one underlying offense, each underlying offense must be treated as if contained in a separate count of conviction for the purposes of subsection (a)(2).

4. Pursuant to U.S.S.G. § 3D1.1(a), because there are multiple underlying offenses—to wit, a conspiracy to distribute and possess with intent to distribute marijuana and an assault with intent to commit murder on or about June 5, 2016—a multiple count analysis must be performed.

5. Pursuant to U.S.S.G. § 3D1.2, each underlying offense comprises its own separate Group for Guidelines Analysis.

Marijuana Conspiracy

6. The offense level for the defendant's participation in a conspiracy to distribute and possess with intent to distribute marijuana is calculated as follows:

a. The Guideline applicable to the conspiracy to distribute and possess with intent to distribute marijuana is U.S.S.G. § 2D1.1. Pursuant to U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(11), the base offense level is 18 because the offense involved at least 40 kilograms but less than 60 kilograms of marijuana.

b. Pursuant to U.S.S.G. § 2D1.1(b)(1), an increase of 2 levels is warranted because a dangerous weapon (including a firearm) was possessed.

7. Accordingly, the initial applicable Guidelines offense level for the defendant's participation in a conspiracy to distribute and possess with intent to distribute marijuana is 20.

June 5, 2015 Assault with Intent to Commit Murder

8. The offense level for the defendant's participation in an assault with intent to commit murder on or about June 5, 2016 is calculated as follows:

a. The Guideline applicable to the assault with intent to commit murder is U.S.S.G. § 2A2.1. Pursuant to U.S.S.G. § 2A2.1(a)(2), the base offense level is 27.

9. Accordingly, the initial applicable Guidelines offense level for the defendant's participation in an assault with intent to commit murder on or about June 5, 2015 is 27.

Multiple Count Analysis

10. In calculating the combined offense level, pursuant to U.S.S.G. § 3D1.4, the highest offense level is 27 for the defendant's participation in an assault with intent to commit murder on or about June 5, 2016, which constitutes one Unit. The defendant's participation in a conspiracy to distribute and possess with intent to distribute marijuana is 5 to 8 levels less serious than 27, pursuant to U.S.S.G. § 3D1.4(b), resulting in an additional one-half Unit. Accordingly, with a total of one and one-half Units, pursuant to U.S.S.G. § 3D1.4, the initial combined offense level is 28.

11. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 25.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 57 to 71 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 30, the applicable fine range is $20,000 to $200,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's Criminal History Category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 57 to 71 months' imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $200,000, and the Government agrees not to appeal any fine that is greater than or equal to $20,000. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

It is further agreed that should the conviction(s) following the defendant's plea(s) of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of

limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____
Rachel Maimin
Hagan Scotten
Jessica Feinstein
Drew Johnson-Skinner
Assistant United States Attorneys
(212) 637-2460

APPROVED:

_____
Micah Smith
Deputy Chief, Violent and Organized Crime Unit

AGREED AND CONSENTED TO:

_____
David Mattison

_____
DATE

3/6/17

APPROVED:

_____
Michael J. Gilbert, Esq.
Attorney for David Mattison

_____
DATE

3/6/17

# EXHIBIT B

Dear Judge Kaplan,

My name is David Mattison, I am
25 years old and a father of 3.
When I was growing up I always had
the advantage of having both parents
around. Even after my mother and
Father split I was frequently able
to visit my father and learned alot
from him. My mother was always there
for me as much as she coulve been,
but wasn't able to teach me all the
things my father taught me, like how
to dress for an interview, to fill out
an application, good study habits
that helped me exell in highschool
and helped me with my ADD. He
use to tell me that one day i'd be
the man of my own household and
will have to provide for my family
and teach them what he taught me.
Ever since I graduated highschool
I tried my best to make sure I
had a job and when my children came
I made sure I spent as much time
with them as possible. On

June 22nd I missed my first son's graduation from Kindergarten. On June 26th I missed his 6th birthday. I may not have been the best parent, or citizen but I tried and will continue to try and make improvements upon my release. In 2016 when I was arrested I was in the process of going back to school and obtaining an apartment with one of my childs mothers. I had intentions on getting a bachelors degree and pursuing a career in the accounting feild. This situation kinda slowed things up but everything happens for a reason and I feel like I've learned my lesson for my past mistakes in the post year. I never wanted to hurt anybody, I was just spending my free time around the wrong crowds. This is my first and will be my last time getting into any legal trouble. I'm just asking for leniency so I can go back to being apart of my kids lives. I don't wanna miss anymore birthdays graduations or any other important moments in their lives.

Respectfully

David Mattison

# EXHIBIT C

Dear Judge,

My name is Maureen Mattison, mother of David Mattison. I'm a home health aide, I care for the elderly. Let me tell you that David is not the bad person,  that he has portrayed himself to be.

I raised David and my other children as Jehovah's Witnesses. David did not associate with kids in his area but with kids from the kingdom hall (our place of worship). But after his father leaving and sister being killed by a drunken driver he had no motivation to stay on the right path.

In School David was highly intelligent, he had trouble sitting still because he had  ADHD, this would, cause him to act out constantly . Kids would pick on him because of his differences all throughout school.

In high school he decided to dumb himself down so he could fit in at school and in the projects where we lived. After David graduated, he started hanging with Laquan and his friends. My kids met, Laquan when David was in 8th grade and since then they been on the wrong path.

Before David even got arrested he started realizing Laquan wasn't  a good friend after a incident and started  to stray away from him.

I know David has learned his lesson just by speaking to him. He wants to get to his kids Jaden, Dallas, and Dakota. I pray you have mercy on David because I know he has out grown all his childish ways and just wants to raise his kids not to follow in his path.

Right now Jaden needs him the most , He's five and acts out just as his father used to. Jaden also had ADHD and the sudden leave of his father was tough on him and triggered him to act out more.Im afraid that if Jaden doesn't get handled correctly he could be lost and I do not want that for my grandson.

I know David can and WILL do better, so please give him a chance. I love him and I know he's sorry and regrets his actions.

I also apologize because I am partly to blame I should have moved him out of the neighborhood and sent him upstate with his father, but because I felt he was irresponsible I didn't, so I do apologize for my actions as well.

So judge Kaplan I humbly ask you to please have mercy on my son when sentencing him so he can get back to his children and teach them right from wrong.

I thank you for hearing me, Maureen Mattison, David's Mother.

Hi Judge I am David Mattison's older Sister Tashika Mattison. I am the oldest of 8 children. I'm 30 years old and I currently care for patients with disabilities. David is now the second oldest because our sister Shauna passed away back in 2004 when she was just 15 years old from a car accident. Ever since her passing our life has never went back to normal. I believe then is when there were behavioral issues with not just my brothers but my sister as well. They were young so they took it hard I believe they did not know how to express themselves really, especially David. So then hanging around the bad crowd and fighting became the norm. David is very smart I can say. He graduated from high school he is very good in Math. He even used to tutor me when I needed help. My brother is the life of the family. He is extremely funny and caring and loving and the annoying lil brother nobody wants to have. He is nothing what these charges are making him out to be. He is really the one that was influenced and hanging Around the wrong crowd. We were not raised in that manner. We grew up as Jehovah's witnesses. We have both of our parents in our lives. I really and truly believe that when David comes home he is gonna pick up where he left off and that was working and providing for his three children. David really matured over the years. He is a good father and will potentially be a great husband one day. Please don't let childhood mistakes ruin his life. David was on the right track before the indictment. He was finally looking into starting college. He does not belong in Prison judge. Please give a chance if not for David, a chance for his kids to grow up with a father.

# EXHIBIT D

To the Honorable Judge Kaplan,

I'm Curtis Perkins and I've known David to be a positive contribution to the community. Before becoming a private contractor I worked as a security guard in the Eastchester Gardens community center from 2012 - 2014.

When working in a community center with children and young adults their are always peace makers and as I call them "peace breakers". Although David may have his flaws he was one of the peace makers.

I recall a incident where an intern Kaheem Hemphill got his phone stolen by one of the young adults in the community center. After myself and some other staff checked the camera we approached the guy we saw took the phone on camera. The person was uncooperative. The coach also known as the head manager was ready to just let the police handle the situation. David offered to try and get back the phone and asked for a half a hour before we called authorities. We've seen David and this person hanging out along with a few other guys in the community.

I can not tell you what David did or said but; in 20 minutes David and the person arrived back to the center. The young man then gives Kaheem back his phone, reluctantly but still gives it back. There has been other incident similar to this where David tried to end certain situations instead of escalate them.

I am not trying to undermine or water down the seriousness of the crimes David has committed or say he's a perfect person but just show you a side that you haven't seen or heard. Thank you for taking your time to read this.

Curtis Perkins

# EXHIBIT E

Dear your honor

My name is Ruth Perkins I am a secretary at the collegial Institute of math and science in Columbus high school campus.

I've known David for 7 years.

As a mom I know kids never Listen to there parents but I remember Davids mother hounding him and his brother to just stay out of trouble stop hanging outside so much. Yeah, it takes them a minute for it them to get but I honestly believe he got it almost a year before the arrest.

He was taking care of his kids no matter the situation, and he's been through some complicated situations. He was working , doing security part time. A job that keeps the peace.

He was realizing that standing outside wasn't what life was about anymore it was about his kids and his future, from what I could see.

No matter if David and my daughter were dating or not she always kept him around, she said he was different and I saw that.

His conversations are intellectual, he makes you question things you wouldn't normally question.

Since he's been incarcerated I've only spoke to him about twice but it sounds like he learned from his stupid actions, and is ready to prove he is different. What I don't want to do ; is say jail is the thing that changed him because, he was working on himself before he got arrested. I will say this gave him a rude awakening and he is  eager to show he can and will do better.

Dear Honorable Judge Kaplan,

my name is Gabrielle and Perkins, I am a substitute assistant teacher for the department of education. I also work as art counselor at an afterschool program named DFOY (direction for our youth)

I am David's girlfriend but we have always been best friends for about six year. David and I have been through a lot of ups and downs but the person he is; is why am still here supporting him today.

Since David has been incarcerated it's been difficult on all his close family and friends including myself. I haven't slept really good in the past year and some change I always worry if he's safe . It's a little hard supporting myself, my daughter, taking care of my bills, and helping him through this tough time ,but I do it with minimal complaints because he's honestly a good person with a good heart.

David is intelligent he cares not only for himself but for others.before we were dating we were always friends, he would help me study for my regents,help me with my math homework. I wasn't always the prettiest or The coolest but he always had my back and never let anyone mess with me, he always protected me.

I am not sure the timeline of the incidents he was charged with but I do know that for the past couple of years he was trying to change for the better. He has paystub's and a security license to prove it. I also know in the time I've known David this is the first he's been charged with anything.

David doesn't get into much trouble and the charges against him are nonviolent because that's the kind of person he is, not violent.

Since David has been incarcerated he has been to solitary confinement once along with his COD's, in his first couple months in MDC.

After that incident reality really settled in for him I think. He has not been back to solitary confinement since that time what has he been in any trouble he keeps his head low and out of trouble. Many of his his other the COD's have been back to solitary confinement but although David has been around them he does not follow what they do. I only say this not to put others down but to show he's not a follower he has a mind of his own. This proves some of his character as well.

David and I agreed that he will be staying with me in my new apartment. I moved into A two family private house,  in the Bronx. My place is also not far from his family and his children. It's a two bedroom with a nice size backyard ,in a nice neighborhood.

He will have the freedom to go to work and care for his children. We also have an understanding that upon release he will have a limited amount of time to find a job and when he's on his feet he will do his part and help contribute. Being home will be good for him but it won't be easy for him, he will continue to have responsibilities.

David has a great support system his mother,his sister, his close family myself, and my family. I ask that you take this letter into consideration when reviewing his file for sentencing, prove he is a asset to society and not a menace.

Sincerely, Gabrielle

# EXHIBIT F

06|1|2017


To whom it may concern,


My name is Victoya Mcdermott  Im the mother of David Mattison's  one year old daughter, it's been hard raising her without the help of her father and I know it's been even harder on him because he never actually got a real chance at getting to know her, David has missed most of her first year im hoping he doesn't have to miss much more. David has three kids and is a wonderful father to all three, sometimes he hangs out with the wrong crowd but he was a kid and grew into an even better young man. David was about to return to school before the indictment and he was looking for a place of his own for  him, his daughter and myself with enough space for his two other children to come over whenever they please.  My daughter misses her father very much and cries whenever she sees a photo of him. David plans on continuing that once he's back home, he plans on going back to school getting a job and looking for a place of his own and I plan on supporting him 100%. If you have any further questions or concerns feel free to contact me.


Victoya Mcdermott

Vmcdermott93@gmail.com

(347)366-4909

Dear Your honor,

My name is Raeann Stanberry, I am the mother of David's five year old son Jaden.i was previously a cook at Mount Sinai Hospital but, right now I  am not working.

Jaden always was a little hyper due to his ADHD but the older he gets the harder it is to control him. As a mother I can only teach him what I know. Jaden needs his father to provide guidance and structure.

David would have Jaden almost every weekend and even if I needed to drop him off on short notice, if he was available he was always up to it.

As Jaden got older the bond and love he had for his dad grew strong. They had a bond that was unique, father & Son.

David's sudden arrest was very hard on Jaden and his behavior began to plummet.

He talks about David all the time, how much he misses him, and asking where he is.

I brought Jaden to visit his father once thinking it would help and it only made him worst.

Everything was great until it was time to leave. Having him see David and then having to leave him again, was the same as him leaving in the first place.

He wanted to take him home.

Judge Kaplan I beg on behalf of my son that you are lenient with His father's sentencing . He needs and misses his David. I will always do my best and more for my child but some lessons a son needs to learn from his father, before it's too late.


Thank you,

Raeann Stanberry

# EXHIBIT G

To whom it may concern,

My name is Zedica Davis and I am an ex-girlfriend and very good friend of David Mattison. First, I want to say that I am aware of the crimes he is being accused of. However, the David that I know is not the David that could've ever done those things. I met David in 2010; he was charming and had the ability to make anyone in the room laugh. I quickly fell in love with his genuine character, he was smart, loyal, and wasn't afraid to show his emotions. In 2011 I became his girlfriend. During this time it didn't matter what it was, if it would make me happy David did it. If I was mad at him, he killed himself to make me smile. When I was stressed about school, he helped me study. Any drama I got into with friends or family, he was always there to listen and never afraid to tell me whether or not I was wrong. When I graduated high school, he was there throughout the whole ceremony. In 2013 when I joined the Navy, he didn't have a job or at least ten dollars to his name but I asked him to take me out to eat before I left and he sold his Xbox just to be able to. While I was in the Navy, my mother and David were the only ones that returned my letters and worked hard to keep me sane. But still, our relationship wasn't perfect and we ended up breaking up in 2014. Though our relationship was over that didn't change the bond we had developed over the years. In 2015 his life had begun to spiral out of control and I think my presence helped him to cope and manage everything that was going on. During this time he was expecting two kids and getting over a betrayal by one of his closest friends. It was then that I started to admire his strength. The newspapers and TV make David out to be a criminal when in all actuality I believe that he is just a young black man that grew up in the wrong neighborhood and had the misfortune of being associated with the wrong people. What

they don't know is that he was a straight A student in high school, he lost one of his sisters when he was young and has been the strength in his family ever since, he would do anything to make the people he loves happy, and that before this, he had never been arrested for anything as serious. All I ask is that you look into the eyes of the man in front of you and not punish him for circumstances in his life he had no control over. Instead, give him what he deserves, which is to go home to his mother, sisters, three children, and the rest of us that need a David Mattison in their lives.

# EXHIBIT H

1130 Burke Ave (Management Office)
Bronx NY 10469
718-547-7033
347-275-1462
718-881-4416 (fax)

# Eastchester Gardens Residents Council

5/8/16

To The Honorable Court,

I have known David Mattison since his teenage years.  During that time, I have always known David to be a kind, giving and loving person. He has a strong family-oriented background, has always tried to do the right thing. How he ever got into this situation is incomprehensible to me, as this is not the person I know. The Court will only view him based on his actions here. But I ask the Court to consider his life, too. He has helped out and attended various community functions sponsored by this association and has a command of the English language for someone his age that I feel is remarkable.   It is true that a crime has been allegedly committed and the guilty party must own up to the consequences. I do not dispute this. But I ask on behalf of myself and others - to consider David Mattison not only for the action before the Court, but for all his actions in his life that warrant merit, as well.

Thank you for your consideration.

Keith Ramsey

Eastchester Resident Council

*The next level in community involvement*

*June 22, 2017*
*Page 2*

Thank You,

Eastchester Gardens Resident Council

Eastchester Gardens Advisory Committee

c.c

Councilman Andy King, DYCD,NYCHA, Mayor's Office Community Affairs Jeremy Warneke, Assemblyman Carl

Hastie,                                    State Senator Ruth Hassel Thompson, , Bronx Press Review,

Bronx Times Reporter,

# EXHIBIT I

# U.S. Department of Justice

## Federal Bureau of Prisons

### MDC Brooklyn Education Department

Presents this Certificate to

*David Mattison*

*Having Successfully Completed Requirements of Instruction:*

SHU Resume Writing:
*Define Yourself Before You are Defined*

**December 21, 2016**

D Greco – Teacher

# MDC Brooklyn
# Recreation Department

*This is to Certify that*

## David Mattison

*Has Successfully Completed the:*

## Art Class

*At MDC Brooklyn*

*This certificate is hereby issued this 28th day of September, 2016*

### D. Siddiqui

*Recreation Specialist*

# MDC Brooklyn
# Recreation Department

This is to Certify that

## David Mattison

Has Successfully Completed the:

### Art Class

At MDC Brooklyn

This certificate is hereby issued this 31st day of August, 2016

*D. Siddiqui*

Recreation Specialist

# MDC Brooklyn
# Recreation Department

*This is to Certify that*

## David Mattison

*Has Successfully Instructed the:*

### Art Class

*At MDC Brooklyn*

*This certificate is hereby issued this 14th day of February, 2017*

*D. Siddiqui*

Recreation Specialist

# MDC Brooklyn
# Recreation Department

*This is to Certify that*

## David Mattison

*Has Successfully Completed the:*

### Cardmaking Class

*At MDC Brooklyn*

*This certificate is hereby issued this 29th day of September, 2016*

*D. Siddiqui*

*Recreation Specialist*

# MDC Brooklyn
# Recreation Department

*This is to Certify that*

## David Mattison

*Has Successfully Completed the:*

## Health Education Program

*At MDC Brooklyn*

*This certificate is hereby issued this 4th day of October, 2016*

*D. Siddiqui*

*Recreation Specialist*