UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
            :
UNITED STATES OF AMERICA      :
            :    S1 16 Cr. 212 (LAK)
      - v. -                  :
            :
JAQUAN MCINTOSH,              :
            :
         Defendant.      :
            :
------------------------------------------------------------------------X

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

JOON H. KIM
Acting United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

RACHEL MAIMIN
HAGAN SCOTTEN
JESSICA FEINSTEIN
DREW JOHNSON-SKINNER
Assistant United States Attorneys
    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA                                                :
                                                                        :    S1 16 Cr. 212 (LAK)
                     - v. -                                             :
                                                                        :
JAQUAN MCINTOSH,                                                        :
                                                                        :
                                    Defendant.                          :
                                                                        :
------------------------------------------------------------------------X
```

## PRELIMINARY STATEMENT

The defendant in this case, Jaquan McIntosh, is scheduled to be sentenced on July 19, 2017. The Government respectfully requests that the Court sentence McIntosh to a term of imprisonment at the high end of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 210 to 262 months.[1] McIntosh is a murderer. He gunned down a rival gang member on the victim's 17th birthday and participated in the shooting of two other rival gang members, one of whom was shot in the chest but survived. McIntosh has also continued associating with—and promoting—the 2Fly YGz ("2Fly" or the "Gang") in jail on this case— even after pleading guilty to murder. Accordingly, a sentence at the high end of the stipulated Guidelines range is necessary to punish and deter McIntosh and to protect the community from his future crimes.

---

[1] This differs from the range calculated by the Probation Office because of an error by the Probation Office.

**I.      Procedural History**

On April 27, 2016, the S1 Indictment in this case was unsealed, charging 57 members and associates of 2Fly with: (1) racketeering conspiracy, in violation of Title 18, United States Code, Section 1962; (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution, in violation of Title 21, United States Code, Section 860; and/or (4) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

On November 7, 2016, McIntosh pled guilty to Count One of the S1 Indictment in this case, *i.e.,* a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962. (PSR ¶ 8.)  During his allocution, he admitted to killing Simpson.

**II.     Offense Conduct**

   **A.  Background**

Beginning in December 2014, the New York City Police Department, the Drug Enforcement Administration, Homeland Security Investigations, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation into two rival street gangs—2Fly and the Big Money Bosses ("BMB")—that were operating in the Bronx, New York.  The investigation revealed that since at least in or about 2007, up until in or about 2016, members of BMB and 2Fly were involved in a variety of racketeering acts, including murders, attempted murders, robberies, narcotics trafficking, bank fraud, and counterfeit currency offenses.

   **B.  2Fly**

The structure of 2Fly is described accurately in the PSR.

2Fly was a subset of the "Young Gunnaz," or "YG" street Gang, which operates nationwide.  2Fly was based in the Bronx, within and around the Eastchester Gardens housing

2

development ("ECG"), and developed out of a smaller, precursor crew called the "Fresh Kids." ECG is a rectangular complex of residential buildings in the Northern Bronx bordered by Burke, Adee, Yates, and Bouck Avenues, in the middle of which is a playground. Laquan was one of the leaders of 2Fly.

Members of 2Fly controlled the narcotics trade at ECG, which took place in the open air at the playground and in apartments at ECG. Members primarily sold marijuana and crack cocaine, but also sold powder cocaine and prescription pills, such as oxycodone. 2Fly coexisted at ECG with a faction of the Bloods Gang called "Sex Money Murder" ("SMM"), which controlled ECG before 2Fly and allied with 2Fly to prevent others from selling drugs at ECG. Members of the Gang kept guns nearby in garbage cans—feet away from the playground—or in cars in case such violence becomes necessary. These guns were accessible to all 2Fly members and associates. On February 22, 2014, for instance, 2Fly member Elijah Brown, a/k/a "Lil Eli," was arrested after he was seen by police officers retrieving a defaced and loaded gun from behind a garbage can at ECG. Similarly, 2Fly member Dante Gregory, a/k/a "Smiley," was arrested at the ECG playground on April 8, 2014 with a loaded .25 caliber handgun.

2Fly members used relatively elaborate language to communicate with each other, including "peacing" each other using particular words that, if not used properly, could indicate that a person is falsely claiming to be a member (which could lead to violence). There was no formal ceremony to join the Gang, but a young man who sought to join must have generally brought his "resume" of acts of violence in order to gain admission.

In addition to its narcotics trafficking, 2Fly members and associates engaged in acts of violence, including shootings, stabbings, robberies, and gang assaults. Members who engaged in a sufficient amount of violence could earn a leadership position, the highest of which were called

"Big Guns." Members who "have the Big Gun" were permitted to recruit others into the Gang and order acts of violence.

Members of 2Fly bragged about the Gang and their narcotics trafficking and violence on social media sites, such as Facebook and YouTube. The Gang's Facebook postings and rap videos were not merely for show; they represented a way for rival gangs to communicate with each other and thereby inflamed gang rivalries.

Many of the acts of violence related to the longstanding rivalry between BMB and 2Fly. 2Fly also has developed rivalries with other street gangs in the northern Bronx, including the "Slut Gang" based in the Boston-Secor housing development. Among other things, 2Fly members developed a practice of going "mobbing," meaning to gather in large groups and travel to the base of operations of a rival Gang to engage in violence there. Members of rival Gangs also sometimes went "mobbing" and attacked or attempted to attack 2Fly at its base of operations at ECG. The relatively close proximity of the BMB and Slut Gang bases contributed to the frequency of acts of violence.

### C. McIntosh's Role with the Gang

McIntosh—the brother of his co-defendant, Sean McIntosh, 2Fly's "spokesperson"—was a member of the Gang. He is also a murderer.

McIntosh's murder victim, Donville Simpson, was a member of BMB. On his 17th birthday, Simpson and other BMB members went to ECG to shoot at members of 2Fly. McIntosh and his brother, Sean McIntosh, were sitting in a courtyard of ECG. A shootout ensued between the gangs, during which McIntosh retrieved a nearby gun, kept at ECG by 2Fly for just these occasions—as discussed above—and shot Simpson in the head. The shot to

Simpson's head caused multiple skull fractures and brain injuries, which killed him. After Simpson went down, McIntosh bragged: "I got that motherfucker."

This was not McIntosh's first serious act of violence with the Gang. In August 2012, he and other members of 2Fly, armed with guns, went to a public park known to be frequented by BMB members and began shooting. Two BMB members were shot—one in the chest and one in the leg. When the BMB members returned fire, a 14 year old girl was shot in the crossfire.[2]

Since he has been at the MDC, McIntosh has continued associating with and promoting 2Fly. On or about April 19, 2017, McIntosh was intercepted at MDC passing the documents appended hereto as Exhibit A to one of the Gang's leaders, Laquan Parrish. While we cannot prove who authored the material, it contains a list of gang codes and notes that, "As far as 2Fly me, Maddog [Laquan Parrish], Dula [Andre Bent] & Cito [Aaron Rodriguez] got the situation, we on a new chapter who ever told or did some type of backbiting is a dubb." This demonstrates that McIntosh and the leaders of 2Fly were maintaining their alliance in jail and also maintaining the anti-snitching norm of the Gang.

### III. The Defendant's Criminal History and Guidelines Calculation

The PSR reports a prior juvenile adjudication of McIntosh for stealing a bicycle from 2010, about which counsel did not know at the time of the plea agreement. There is no dispute that this results in 1 criminal history point. However, the Government agrees with McIntosh that there is not proof by a preponderance of the evidence that McIntosh committed any overt acts in connection with the charged conspiracy during his time of probation after the bicycle offense. Accordingly, McIntosh is still in Criminal History Category I and the Guidelines are 210 to 262 months' imprisonment as the parties stipulated in the plea agreement.

---

[2] The Government cannot prove one way or another by a preponderance of the evidence whether McIntosh was a shooter that night or aided and abetted other armed gang members as backup.

5

## 3553(a) ARGUMENT

For the reasons that follow, a sentence at the high end of the Guidelines range—and not the drastic downward variance McIntosh requests—is necessary in this case to punish and deter McIntosh and to protect the community from his future crimes.

McIntosh participated in an attempted murder in 2012. Even though three people were shot—including an innocent 14 year-old girl—McIntosh was not scared straight. To the contrary, just a few years later, he gunned down Donville Simpson, bragging that he "got that motherfucker." And even after being caught and prosecuted for this most serious crime, while awaiting sentencing by Your Honor, McIntosh still maintained his close ties to the Gang, passing Gang notes to a leader of 2Fly and incurring other disciplinary violations while in jail. McIntosh has therefore given this Court no reason for the leniency he seeks, no reason to hope that the community will be safe from his future crimes.

McIntosh murdered Simpson in a courtyard at ECG, a place where families try to live their lives in peace and safety. On the night of Simpson's death, it was turned into a war zone, placing all who lived there at risk. A sentence at the high end of the Guidelines will send a message that participating in gang shootouts in public spaces will be treated most harshly by the Courts, and is necessary to punish McIntosh sufficiently for taking a life.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence at the high end of the Guidelines range.

Dated: New York, New York
July 13, 2017

                                      Respectfully submitted,

                                      JOON H. KIM,
                                      Acting United States Attorney for the
                                      Southern District of New York,

By: \_\_/s/_____
                                      Rachel Maimin
                                      Hagan Scotten
                                      Jessica Feinstein
                                      Drew Johnson-Skinner
                                      Assistant United States Attorneys
                                      (212) 637-2460